The STATE of Ohio, Appellee,

v.

SPINKS, Appellant.*

[Cite as *State v. Spinks* (1992), 79 Ohio App.3d 720.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60185.

Decided May 1, 1992.

---

* Reporter's Note: A motion for leave to appeal to the Supreme Court of Ohio was overruled in (1992), 65 Ohio St.3d 1440, 600 N.E.2d 683.

721

*Stephanie Tubbs Jones*, Prosecuting Attorney, and *Edward H. Kraus*, Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.*, for appellant.

FRANCIS E. SWEENEY, Presiding Judge.

Defendant-appellant, Sarita B. Spinks, was indicted on January 31, 1989 on one count of aggravated murder (R.C. 2903.01). After a jury trial, appellant was found guilty of the lesser included offense of murder (R.C. 2903.02). Appellant timely appeals her conviction. For the reasons that follow, we affirm.

The pertinent facts are as follows:

On January 21, 1989, at approximately 6:50 p.m., Detective Timothy Ward of the Shaker Heights Police Department observed Cory Williams on the corner of Farnsleigh and Van Aken near the Van Aken Shopping Center.

Ward recognized Williams because, earlier that day, he had spoken with Williams at the police station. Williams was with a small child, wearing a multicolored jacket and holding a small plastic bag. The small child was later identified as appellant's son.

Linda November testified that at approximately 7:15 p.m., she, her husband and daughter were going to Noggins Restaurant in the Van Aken Shopping Center. While her husband and daughter parked their car, and November walked toward Noggins, she observed a couple, appellant and Williams, talking to each other in raised voices. A physical struggle ensued wherein November observed the man holding the woman's arms up in the air as if to defend himself. November next heard a slap or a loud noise and observed the woman running away. The man then stated he had been stabbed. November proceeded into the restaurant, went back outside and observed appellant calling for an ambulance. At this point, Williams was still standing or sitting against a car. November went back into the restaurant and told someone to call an ambulance. She then went back to her husband, got into the car and drove off. At this point, police cars were already at the scene and policemen were escorting appellant and her son to a police car.

Sandra Gibbons, a nurse, testified that at approximately 7:15 p.m., she and her husband were going to Noggins Restaurant for dinner. She noticed a woman on the phone with a small child standing next to her. The woman seemed very nervous and was shouting out her location. Nurse Gibbons went into the restaurant and, sensing that something was wrong, identified herself as a nurse. She was then led outside where she observed a man sitting on the sidewalk. Gibbons went over to the man, who fell into her arms, stating he was dying and asking her not to let him die.

Nurse Gibbons ripped open Williams' shirt and noticed a large, deep stab wound. Nurse Gibbons hollered that the victim had no pulse and prepared the victim for first aid. She also went with the victim in the rescue squad to the hospital. On redirect, Nurse Gibbons testified that she had to ask the police to move appellant out of the way as appellant was very upset and distracting.

Corporal Robert Rauliniatis, a patrol officer with the Shaker Heights Police Department, testified that at 7:12 p.m., he received a radio call requesting him to respond to a stabbing at the Noggins Restaurant. Cpl. Rauliniatis arrived within seconds and observed a female pacing back and forth with a small child outside the restaurant door. Cpl. Rauliniatis got out of his car and observed the victim lying on his back. After approaching the victim, who had just passed out, Cpl. Rauliniatis walked toward appellant. At that point, Nurse Gibbons asked if she could be of any assistance and was asked to aid the victim.

Cpl. Rauliniatis then spoke with appellant, who denied knowing the victim and stated she had just gotten there. However, when Nurse Gibbons yelled, "There's no pulse," appellant became hysterical and started to run. Cpl. Rauliniatis grabbed appellant and took her driver's license.

Within minutes, Sergeants Herr and Brancato arrived at the scene and were told by Cpl. Rauliniatis to detain appellant. Sgts. Herr and Brancato then proceeded toward appellant, who proceeded to run. After catching up to appellant, appellant blurted out, "Is he dead? Is he breathing? I just got here! I just came from home! Is he going to die?"

At approximately 7:20 p.m., Det. Ward arrived at the scene. Appellant was placed in custody, advised of her constitutional rights, and transported to the police department. En route, appellant was advised of her constitutional rights again, but continued to state that she did not know why she was being arrested and that she had just gotten there. Upon reaching the police department at approximately 7:30 p.m., appellant was placed in an interviewing room, where she gave Det. Ward an oral statement essentially reiterating her statements given in the police cruiser. Meanwhile, Det. Klima took appellant's six-year-old son, Jason Spinks, for questioning. Later, the detectives informed appellant that Jason had told them everything and that they had the knife. Appellant then gave another statement, which was reduced to a transcript, signed and initialed by appellant and admitted into evidence. This recording began at approximately 9:11 p.m. and the transcript was signed at 11:46 p.m. Appellant admits to stabbing the victim, Cory Williams, though she claims it was done in self-defense.

Appellant testified in her own behalf. She alleged numerous instances of abuse by her common-law husband, Cory Williams, during their approximate one and one-half years of cohabitation. Essentially, appellant stated that Cory was a jealous and abusive partner, but that she loved him and wanted to make the relationship work.

Appellant stated that on Saturday, January 21, 1989, Cory left their apartment at 4:30 a.m. to go to work for RTA. Appellant's next contact with Cory was not until approximately 6:00 p.m. later that day. During the course of the day, appellant ran various errands in preparation for a weekend trip to Lorain with Cory and her son Jason.

After learning from her mother that Cory had not obtained a rented car for their trip, appellant and Jason rented some videos from Erol's Video. Appellant then went back to their apartment, but was unable to get in. There, appellant found a note from Cory stating that he had sent her belongings to Lorain and that he was leaving her. Next, appellant crossed the street to call her mother, where she ran into Cory. Appellant testified that at first she did

not recognize him; he seemed very upset and angry. Appellant stated that he began calling her names and demanded to know where she had been all day. Appellant testified that Cory was pushing and yelling at her. Appellant then ran across the street to the Rite–Aid drug store, leaving Jason behind.

Appellant stated that Cory told her he would kill her as soon as Jason told him who she was with all day. Appellant went inside the Rite–Aid to call the police, but hesitated because, she stated, the police were tired of responding to calls from her and Cory. Appellant testified she started walking around the store. She bought a pair of mittens, as she was cold, and, after happening upon an aisle with kitchen knives, decided to buy one, hoping to scare Cory away. Appellant then went back across the street to get Jason as she was afraid for Jason's safety. Cory immediately began pushing her and accusing her of adulterous relationships.

Appellant testified that she showed Cory the knife and waved it at him several times in order to scare him into leaving her alone. At one point, appellant stated she swung the knife at Cory's coat. Later, she testified, she realized this was when she must have stabbed the victim. At first, appellant did not believe Cory was hurt; she thought Cory was trying to trick her. When she learned otherwise, she became hysterical and attempted to call an ambulance. Further, she testified that she does not recall what she told the police.

Dr. Lynn Rosewater testified on behalf of the defense as an expert witness. Dr. Rosewater testified about the battered woman syndrome. It was her opinion that appellant suffered from the battered woman syndrome and, as such, appellant reasonably believed she was in imminent danger of great bodily harm and acted reasonably and justifiably. Dr. Rosewater further stated that appellant did not perceive any way of escape and that she felt she would be killed.

Based upon the above evidence, the jury found appellant guilty of murder in violation of R.C. 2903.02. Appellant timely appeals, raising ten assignments of error for our review.[1]

### I

We will consider appellant's seventh assignment of error first. Appellant contends the trial court prejudicially erred by denying her motion to suppress. Appellant argues her statements were not the product of free will. This argument lacks merit.

---

1. See Appendix.

When the admissibility of a confession is challenged, the state must prove its voluntariness by a preponderance of the evidence. *State v. Melchior* (1978), 56 Ohio St.2d 15, 25, 10 O.O.3d 8, 14, 381 N.E.2d 195, 201. The court must determine whether, under the totality of the circumstances, the police obtained the incriminating statement by coercion or improper inducement. *State v. Garcia* (1986), 32 Ohio App.3d 38, 40, 513 N.E.2d 1350, 1352. A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. *State v. Dailey* (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus.

At the suppression hearing, Sgt. Darrix Herr testified that after placing appellant under arrest, he immediately advised her of her constitutional rights. He testified that she replied she understood them. Det. Timothy Ward also testified that while transporting appellant to the Shaker Heights Police Department, he orally advised her of her constitutional rights. Further, Det. Ward read appellant her rights prior to taking her statement. Finally, after appellant's statement was transcribed, she read and initialed every page of her written statement. In fact, appellant made a number of revisions to her statement prior to signing it. Additionally, at the end of her written statement, and prior to her signature, appellant wrote "yes" and placed her initials next to seven questions asking whether she understood each of her *Miranda* rights.

Based on the totality of the circumstances, we conclude the trial court did not err in determining appellant's confessions were voluntarily given and free of police coercion.

Accordingly, appellant's seventh assignment of error is overruled.

## II

In appellant's fourth assignment of error, appellant contends she was denied due process of law and a speedy trial. On August 14, 1989, the trial court held a hearing on various motions, including the state's motion *in limine* to exclude the testimony of Dr. Lynn Rosewater on the battered woman syndrome. The trial court overruled the state's motion, and the state duly filed a notice of appeal. Leave was granted by this court, which affirmed the trial court's decision in *State v. Spinks* (May 3, 1990), Cuyahoga App. No. 58419, unreported, 1990 WL 56554. Appellant was then brought to trial on May 25, 1990. Appellant argues that the speedy-trial statute (R.C. 2945.71 *et seq.*) was not tolled by the state's appeal. This argument lacks merit.

R.C. 2945.71(C)(2) provides that a person against whom a charge of a felony is pending shall be brought to trial within two hundred seventy days after his arrest. R.C. 2945.72 delineates various grounds for extending the statutory time limits. Specifically, R.C. 2945.72(I) provides, in pertinent part, that the time within which an accused must be brought to trial may be extended by any period during which an appeal filed pursuant to R.C. 2945.67 is pending.

In the present case, appellant was arrested on January 21, 1989 and held in jail in lieu of bail until January 25, 1989. This time period counts as twelve days. R.C. 2945.71(E); see, also, *State v. Smith* (1981), 3 Ohio App.3d 115, 118, 3 OBR 130, 134, 444 N.E.2d 85, 89, fn. 7 (day of arrest excluded from speedy-trial computation). The record further reflects that the trial court granted two continuances at appellant's request beginning February 28, 1989, continuing to April 17, 1989. Thus, these forty-seven days are tolled from the speedy-trial requirements. R.C. 2945.72(E). Thereafter, the state filed its notice of appeal pursuant to R.C. 2945.67 on September 7, 1989. Pursuant to R.C. 2945.72(I), the time period in which an appeal is pending tolls the speedy-trial statute. See *State v. Padavick* (Feb. 18, 1988), Cuyahoga App. No. 53343, unreported, at 25–26, 1988 WL 18656; and *Akron v. Downey* (1984), 24 Ohio App.3d 225, 24 OBR 435, 495 N.E.2d 28 (time tolled upon filing of notice of appeal). Subsequently, this court journalized its decision affirming the trial court's decision on May 14, 1990. However, speedy-trial time was tolled an additional thirty days during which the state could have appealed our decision to the Supreme Court. *Padavick* and *Downey, supra.* Thereafter, appellant was brought to trial on May 25, 1990. Thus, the speedy-trial requirements of R.C. 2945.71(C)(2) were tolled from September 7, 1989 to the date of trial (R.C. 2945.72[I]) and from February 28, 1989 to April 17, 1989. Accordingly, appellant was brought to trial within one hundred eighty-eight speedy-trial days. Moreover, assuming that the time period in which an appeal is pending did not begin until October 20, 1989, when this court granted leave to appeal, appellant was still brought to trial within two hundred thirty-one speedy-trial days. R.C. 2945.71 *et seq.*

Appellant also asserts a denial of her constitutional rights to a speedy trial.

■ However, this court has previously rejected such a contention where the delay between arrest and trial was four years. *Padavick, supra,* at 27. The present case involves a delay of approximately one year and four months. Moreover, the state's appeal raised issues which, at the time of appeal, were presently before the Ohio Supreme Court and had yet been decided. Additionally, the charged offense (aggravated murder) was sufficiently serious, and appellant remained free on bond. Finally, we can see no prejudice to appel-

lant as her trial testimony substantially mirrored her written statement given the day of her arrest.

Accordingly, appellant's fourth assignment of error is without merit.

## III

In appellant's second assignment of error, appellant argues she was denied her right of confrontation and cross-examination when the trial court allowed the decedent's statement to the police that appellant had threatened to blow his brains out to be read into evidence. The decedent's statement was contained within a police report taken by a Shaker Heights police employee. Conversely, the state argues the statement was properly read to the jury pursuant to Evid.R. 803(6), the business records exception to the hearsay rule.

However, neither Evid.R. 803(6) nor Evid.R. 803(8), the public records and reports exception to the hearsay rule, permits the state to prove its case through police records or reports or portions thereof. See *State v. Wade* (June 11, 1987), Cuyahoga App. No. 52374, unreported, 1987 WL 12613. In criminal cases, that procedure violates both the hearsay rule and the accused's constitutional right of confrontation. *Id.* at 5.

Nonetheless, we conclude that the admission of the decedent's statement, as read to the jury, is harmless beyond a reasonable doubt and did not contribute to appellant's conviction. Appellant admitted to stabbing the decedent, but raised the defense of self-defense. However, substantial evidence exists to otherwise refute appellant's claimed defense. Linda November testified to having witnessed the altercation between appellant and the decedent. She stated it appeared as if the decedent held appellant's arms to defend himself. Nurse Gibbons testified that while rendering first aid to the decedent, she had to ask that appellant be moved as appellant was very upset and distracting. Officers Rauliniatis, Herr and Det. Ward testified as to appellant's demeanor immediately after the stabbing as well as her general denials of not knowing what had happened.

Therefore, we find no prejudicial error in reading the decedent's statement to the jury.

Accordingly, appellant's second assignment of error is overruled.

## IV

In appellant's third assignment of error, she contests the trial court's refusal to allow her to corroborate her own testimony of the decedent's violent character through various witnesses and records. Specifically, appellant sought to introduce the following: advice her mother had given her regarding

the decedent, records from the Warrensville Heights Police Department wherein the decedent was involved in alleged violence with his ex-wife, and a divorce complaint and affidavit of decedent's ex-wife.

■ A defendant, when arguing self-defense, may testify about specific instances of the victim's prior conduct which were known to the defendant in order to establish the defendant's state of mind. *State v. Carlson* (1986), 31 Ohio App.3d 72, 31 OBR 112, 508 N.E.2d 999, paragraph one of the syllabus; *State v. Brown* (May 7, 1987), Cuyahoga App. No. 52098, unreported, at 3–4, 1987 WL 11197.

Evid.R. 404(A)(2) provides that evidence of a pertinent trait of character of the victim of the crime offered by the accused is admissible. Evid.R. 405 provides the means by which character may be proved. A person's character may be proved by reputation or opinion testimony in all cases in which character evidence is admissible. Evid.R. 405(A). Evidence of specific instances of conduct is admissible in cases where character or trait of character is an essential element of a charge, claim or defense. Evid.R. 405(B).

■ In the present case, the trial court afforded appellant great leeway in testifying to matters of past violent incidents between appellant and the decedent. In fact, appellant testified to the decedent's violent past with his ex-wife. This was entirely permissible. *Carlson, supra*, paragraph one of the syllabus. However, corroborating evidence of the victim's character, offered to substantiate her testimony, through her mother's advice, a police report of a domestic violence incident, and a divorce complaint and affidavit filed by decedent's ex-wife was properly excluded. Evid.R. 405(B); *Carlson, supra*, at 74, 31 OBR at 114–115, 508 N.E.2d at 1001 ("The victim's character is not an essential element of self-defense."); *State v. Smith* (1983), 10 Ohio App.3d 99, 101, 10 OBR 122, 125, 460 N.E.2d 693, 697.

Finally, we are compelled to note that appellant's proffered evidence of out-of-court statements is arguably inadmissible hearsay. Evid.R. 801 and 802.

Accordingly, appellant's third assignment of error is overruled.

## V

Appellant's ninth assignment of error raises three alleged improprieties which, she claims, denied her a fair trial.

First, appellant argues she was denied discovery of Cpl. Rauliniatis' report, from which he refreshed his recollection, prior to testifying. However, Crim.R. 16(B)(2) specifically excludes police reports from discovery. *Beachwood v. Cohen* (1986), 29 Ohio App.3d 226, 29 OBR 272, 504 N.E.2d 1186,

paragraph one of the syllabus; *State v. Workman* (1984), 14 Ohio App.3d 385, 14 OBR 490, 471 N.E.2d 853, paragraph five of the syllabus.

■ Next, appellant argues that Det. Ward impermissibly testified that appellant's oral statement was inconsistent with her written statement. Appellant also argues Det. Ward was impermissibly allowed to give a narrative interpretation of appellant's oral statement. However, appellant failed to object to this at trial and, therefore, has waived any alleged error on appeal. Evid.R. 103(A)(1).

■ Finally, appellant argues the trial court should have granted her motion for a mistrial made after an altercation broke out in the hallway, and outside the presence of the jury, between a spectator seated with the decedent's family and one or more members of appellant's family. The decision to grant or deny a motion for a mistrial under Crim.R. 33 rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 382, 510 N.E.2d 343, 349–350. In the present case, we find no abuse of discretion on the part of the trial court.

Accordingly, appellant's ninth assignment of error is overruled.

## VI

In appellant's tenth assignment of error, she argues the prosecutor impermissibly commented, during closing arguments, on her speaking with her attorneys over the weekend prior to testifying. Appellant also argues she was improperly prevented from commenting during closing arguments that the coroner determined that the decedent's alcohol level was more than .03 percent when, in fact, the coroner testified decedent's alcohol level was .04 percent.

■ The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. In making this determination, the court considers several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. *State v. Barnes* (Oct. 27, 1988), Cuyahoga App. No. 54527, unreported, at 9, 1988 WL 114487.

■ In the present case, the prosecutor's remarks concerning appellant's speaking with her attorneys over the weekend prior to testifying were certainly improper. However, defense counsel immediately objected, and the trial court immediately instructed the jury that "a defendant has a right to

confer with his or her counsel in any case." Therefore, the court's curative instruction rendered the comment harmless. *Barnes, supra;* Crim.R. 52(A).

Next, appellant argues she was impermissibly prevented from commenting that the decedent's alcohol level was more than .03 percent. However, while the trial court sustained the prosecutor's objection in this regard, appellant's counsel proceeded to reiterate the coroner's testimony that the decedent's blood-alcohol content level was, in fact, .04 percent. The prosecutor, again, objected, but the trial court overruled this objection. Thus, appellant was able to refer to the coroner's testimony concerning the decedent's blood-alcohol content level.

Accordingly, appellant's tenth assignment of error is overruled.

### VII

Appellant's first, fifth and sixth assignments of error concern the court's charge to the jury and will be considered jointly.

Initially, appellant argues she was denied due process of law when the trial court refused to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter. This argument lacks merit.

In *State v. Perryman* (1976), 49 Ohio St.2d 14, 29, 3 O.O.3d 8, 17, 358 N.E.2d 1040, 1050, the Ohio Supreme Court said:

"It is the duty of the trial judge in a jury trial to state all matters of law necessary for the information of the jury in giving its verdict. R.C. 2945.11. As a rule of law, this court has established that 'correct and pertinent' requests to charge must be given to the jury, either as specifically proposed, or within the substance of the general charge. *State v. Barron* (1960), 170 Ohio St. 267 [10 O.O.2d 299], 164 N.E.2d 409."

However, failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

In the present case, appellant failed to object to any portion of the trial court's charge to the jury. Moreover, it does not readily appear that appellant was entitled to a charge on voluntary and involuntary manslaughter. It does not appear that there was evidence upon which the jury could have reasonably found that the victim seriously provoked appellant and that the serious provocation was reasonably sufficient to have incited appellant into using deadly force. *State v. Lawrence* (1989), 44 Ohio St.3d 24, 26, 541 N.E.2d 451, 454. The testimony of appellant at trial, as well as that of Dr.

Rosewater, clearly indicates that appellant's defense was based on self-defense and not that she acted as a result of serious provocation. Moreover, no evidence exists upon which the jury could have reasonably found that appellant caused the death of Cory Williams as a result of her committing or attempting to commit a felony or a misdemeanor. R.C. 2903.04.

 Appellant next argues that the trial court's instructions on the definition of "purposely" were inadequate and that the trial court prejudicially failed to define "preponderance of the evidence" as it relates to the issue of self-defense.

While a portion of the trial court's charge to the jury on specific intent is somewhat confusing, the trial court correctly defined "purposely" and succinctly discussed the term in four following paragraphs. Thus, we find no prejudicial error in the trial court's definition of "purposely."

 Moreover, we find no prejudicial error in the trial court's omission of the definition of "preponderance of the evidence" from its charge on self-defense. The trial court made clear that if the state failed to prove beyond a reasonable doubt any one essential element of aggravated murder or murder, or if the defendant proved by a preponderance of the evidence the defense of self-defense, then the defendant is not guilty.

 Finally, appellant argues the trial court denied her a right to be present when the court answered questions to the jury. However, the record reflects that appellant, with the court's permission, was in attendance at her son's graduation. Crim.R. 43(A) specifically provides that the defendant's voluntary absence after trial has commenced shall not prevent continuing of the trial.

Therefore, appellant's first, sixth and seventh assignments of error are overruled.

## VIII

 Finally, appellant's eighth assignment of error states the trial court erred in overruling her motion for judgment of acquittal and/or reduction of the degree of the offense. This argument lacks merit.

Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

In the present case, the trial court heard the testimony of Det. Ward, who read appellant's statement that she killed Cory Williams. Thus, the trial court did not err in overruling her Crim.R. 29(A) motion for judgment of acquittal.

Accordingly, appellant's eighth assignment of error is overruled.

*Judgment affirmed.*

JOHN F. CORRIGAN and ECONOMUS, JJ., concur.

PETER ECONOMUS, J., of the Mahoning County Court of Common Pleas, sitting by assignment.

## APPENDIX

### Assignments of Error

I. The defendant was denied due process of law when the court would not instruct upon the lesser included offenses of voluntary manslaughter and/or involuntary manslaughter.

II. Defendant was denied her right of confrontation and cross-examination when the court permitted to be read to the jury a statement by the decedent.

III. The defendant was denied her constitutional right to present a defense when the court would not allow into [*sic*] corroborative evidence concerning the assaultive nature of the decedent in order to support her claim of self-defense.

IV. The defendant was denied due process of law and a speedy trial when the court overruled her motion to dismiss.

V. The defendant was denied due process of law when the court failed to give complete instructions to the jury on determinative issues.

VI. The defendant was denied a right to be present when the court proceeded to answer questions of the jury without the presence of the defendant.

VII. The defendant was denied due process of law when the court overruled a motion to suppress evidence.

VIII. The defendant was denied due process of law when the court overruled the motion for judgment of acquittal and/or reduced [*sic*] the degree of the offense.

IX. The defendant was denied a fair trial by reason of improprieties during the course of the trial.

X. Improper prosecution argument and limitations on defense argument prevented the defendant from having a fair trial.