59 F.3d 171
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Sarita B. SPINKS, Petitioner-Appellant,
v.
Christine MONEY, Respondent-Appellee.
 No. 94-3492.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1995.
 
 Before: JONES, NORRIS and DAUGHTREY, Circuit Judges.
 OPINION
 PER CURIAM.
 
 
 1
 Petitioner, a state prisoner, was convicted of murder following a jury trial in the Court of Common Pleas for Cuyahoga County, Ohio. The facts of the case are set out in the opinion of the Ohio Court of Appeals, reported as State v. Spinks, 79 Ohio App. 3d 720, 607 N.E.2d 1130 (Ohio Ct. App. 1992). Petitioner appeals from the order of the district court denying her the writ of habeas corpus she requested pursuant to 28 U.S.C. Sec. 2254. The state grand jury indicted her for aggravated murder,[1] and at her trial the court instructed the jury on that crime, on the lesser included offense of murder,[2] and on self-defense. Petitioner contends that the court also should have instructed on the "lesser included offenses of voluntary and/or involuntary manslaughter." Both voluntary and involuntary manslaughter are aggravated felonies of the first degree. Ohio's voluntary manslaughter statute, Ohio Rev. Code Ann. Sec. 2903.03(A) (Anderson 1993), provides, "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." Ohio's involuntary manslaughter statute provides, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony." Ohio Rev. Code Ann. Sec. 2903.05(A) (Anderson 1993).
 
 
 2
 Petitioner has steadfastly couched her appeals in language that would lead one to believe that the trial court refused to charge the jury on voluntary and involuntary manslaughter. However, counsel conceded in the district court that petitioner's trial counsel did not object to the trial court's failure to include those instructions. Trial counsel did not request them even after the jury asked the trial judge if "we have any other options other than aggravated murder, murder or self-defense as described by court instructions." In fact, petitioner never contended at trial that she was provoked into killing her victim. Instead, she claimed that she acted in self-defense.
 
 
 3
 There is a vast difference between killing someone while under the influence of sudden passion or in a sudden fit of rage brought on by serious provocation and killing someone where deadly force is the only means of escaping death or great bodily harm at the hands of the victim. See State v. Robbins, 58 Ohio St. 2d 74, 388 N.E.2d 755 (1979), syllabus paragraph 2. Ohio law treats the latter as a defense to crime and the former as an element of manslaughter that distinguishes that crime from other homicides. A killing brought on by serious provocation leads to conviction for voluntary manslaughter; killing in self-defense results in acquittal.
 
 
 4
 Unquestionably, petitioner's trial strategy was to obtain an acquittal by portraying her conduct as self-defense. She did not ask the judge to instruct the jury that it could convict her of manslaughter if it viewed her conduct as the product of a serious provocation brought on by the victim. One can envision circumstances in which a sensible trial strategy would include requesting a jury instruction permitting the jury to find that a defendant charged with aggravated murder is in fact guilty only of manslaughter. The circumstances of petitioner's case, however, did not compel her trial counsel to pursue that strategy. Adopting petitioner's theory that it was reversible error to fail to give the instructions although they were not requested would be tantamount to our saying that trial counsel's pursuit of a trial strategy of self-defense amounted to ineffective assistance of counsel. The record does not support such a conclusion since the evidence is capable of being viewed as more convincingly supporting self-defense than "sudden" passion or "sudden" fit of rage.
 
 
 5
 The district court agreed with the conclusion of the Ohio Court of Appeals that there was insufficient evidence upon which the jury could have reasonably found that the victim seriously provoked petitioner and that the provocation was sufficient to have incited petitioner into using deadly force. According to the district court:
 
 
 6
 In support of petitioner's claim that the trial court should have instructed the jury on the lesser included offense of voluntary manslaughter, petitioner cites to testimony that, she asserts, supports her defense of self-defense to the charge of murder on the basis of the battered woman's syndrome. ... The jury was free to consider whether, on the basis of this evidence, petitioner was in "imminent danger of death or great bodily harm" and whether "the use of such force was her only means of escape." State v. Koss, 49 Ohio St. 3d 213, 217 (1990) (holding that evidence related to battered woman's syndrome is admissible). Petitioner introduced this evidence to show that she was a "battered woman," not to show that the victim seriously provoked her into "a sudden fit of rage" as required for a finding of voluntary manslaughter. ...
 
 
 7
 In further support of her claim that she was entitled to an instruction on the lesser included offense of voluntary manslaughter, petitioner refers to her own testimony that the victim had struck her several times and had threatened to kill her before she stabbed him with the knife.... Petitioner testified that the victim made the threatening statements to her before she ran across the street to the drug store and before she purchased the knife.... Petitioner introduced no evidence that the victim made any such statement after she returned to him. An act committed while under extreme emotional stress and with sudden passion occurs when there is no time and opportunity for reflection or for passions to cool.... It appears from the record that petitioner had an opportunity to "cool" during the time between when the victim allegedly threatened her and when she stabbed him. Therefore, because there was no evidence of suddenness, it does not appear that petitioner was entitled to an instruction on voluntary manslaughter. ...
 
 
 8
 Petitioner also contends that the trial court should have instructed the jury on the lesser included offense of involuntary manslaughter. ... Petitioner contends that there was sufficient evidence for the jury to conclude that she did not have the requisite "intent" to kill the victim, and that the victim was killed only as a proximate result of her attempt to commit either felonious or aggravated assault.
 
 
 9
 ... Petitioner asserts that she was merely waving the knife around in order to scare the victim, and that it "caught" him in the chest. ... However, the evidence as to the severity of the wound belies petitioner's claim that the stabbing was unintentional. The nurse who attended the victim at the scene testified that the wound was "large and deep...at least two inches wide." ... The coroner who examined the victim testified that the wound was approximately four inches deep. ... Accordingly, petitioner has failed to demonstrate that the trial court, by failing to instruct the jury on the lesser included offense of involuntary manslaughter, deprived her of due process of law and a fundamentally fair trial.
 
 
 10
 This, in our view, is the correct view of the evidence.
 
 
 11
 Accordingly, petitioner has presented no theory under which she is entitled to a writ as the result of the trial court having failed, sua sponte, to give the instructions.
 
 
 12
 Petitioner also contends that she is entitled to the issuance of the writ because her constitutional right to confront the witnesses against her was violated when the trial court permitted a witness to read to the jury a statement recorded in a police report as having been made by the victim on the day he was killed. We conclude that this contention is without merit for the reasons stated by the district court in its thorough analysis of this issue. We also adopt the reasoning used by the district court to dispose of petitioner's other contentions. We agree that those claims lack merit.
 
 
 13
 The order of the district court denying a writ of habeas corpus is affirmed.
 
 
 14
 NATHANIEL R. JONES, Circuit Judge, concurring.
 
 
 15
 I write separately in order to emphasize my belief that, in many homicide cases such as this, where the evidence establishes that the defendant is a battered woman, a manslaughter instruction should be given if it is requested. This court has long recognized that the passion of fear can produce a heat of passion killing. United States v. Guyon, 717 F.2d 1536, 1543 (6th Cir. 1983), cert. denied, 465 U.S. 1067 (1984). Now, there is mounting evidence that battered women may reasonably believe that their lives are in imminent danger, and that women, who suffer from "battered-woman syndrome," often react to cumulative passion built from past experiences of abuse when they kill their mates. See Laurie J. Taylor, Comment, Provoked Reason in Men and Women: Heat-of-Passion Manslaughter and Imperfect Self-Defense, 33 UCLA L. Rev. 1679, 1682 (1986).
 
 
 16
 As many recent cases of notoriety have demonstrated, women who suffer from battered-woman syndrome live in constant fear, not only of future violent episodes, but also that their lives will be in danger if they attempt to leave their batterers. For the battered woman, the home -- a place that should be a safe-haven and sanctuary -- becomes a battle zone. Taylor, supra, at 1705. The cumulative effect of sustained physical abuse may leave a battered woman with apprehension of immediate bodily harm to herself. Id. at 1704. Thus, a battered woman's actions in the context of a particular episode of violence must be viewed in the broader context of the all-encompassing state of terror and cumulative provocation created by past and reasonably-expected future battering. See id. at 1705-1725.
 
 
 17
 My response is shaped by this powerful evidence that women who kill their batterers often act "while under the influence of sudden passion," as contemplated by Ohio's voluntary manslaughter statute, Ohio Rev. Code Ann. Sec. 2903.03 (A) (Anderson 1993). In this case, Spinks testified that she had been involved in an abusive relationship with Williams from June 1987 until she killed him in January 1989. J.A. at 613-628. On the day of the killing, Williams accused Spinks of seeing another man and threatened to bang her head on the pavement until she was dead. J.A. at 686. Although Spinks did not kill Williams immediately following this threat, she could have reasonably believed, under these circumstances, that Williams would follow through on his threat. For her, such a threat was no mere abstraction. Thus, an instruction for voluntary manslaughter would have been appropriate, had it been requested.
 
 
 18
 Nonetheless, I agree with the majority's conclusion that, in the case at bar, defense counsel clearly made a strategic decision not to request a manslaughter instruction, and therefore the writ of habeas corpus should not issue based on the trial court's failure to give such an instruction. I only wish to challenge the premise, evident in the district court's opinion and unchallenged in the majority opinion, see Maj. Op. at [4-5], that a few minutes is a sufficient "cooling" period to abate the fears, passions and emotional stress that are often created by sustained involvement in an abusive relationship.
 
 
 
 [1]
 Section 2903.01(A), aggravated murder, states, "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Ohio Rev. Code Ann. Sec. 2903.01 (Anderson 1993)
 
 
 [2]
 Section 2903.02(A), murder, states, "[n]o person shall purposely cause the death of another." Ohio Rev. Code Ann. Sec. 2903.02 (Anderson 1993)