JOURNAL ENTRY AND OPINION
Defendant-appellant Marshelle Rogers (Rogers) appeals from her jury trial conviction of the lesser included offense of voluntary manslaughter, firearm specifications and carrying a concealed weapon.[1] For the reasons adduced below, we affirm.
A review of the record on appeal indicates that the victim-decedent, Mr. Eric Ross (Ross), was the father of Rogers' grandson, Eric. Rogers' daughter, then twenty-year-old Kristy Rogers (Kristy), was the mother of that grandson.
On February 11, 1998, at approximately 4:00 p.m., Ross, in a car driven by Mr. Carlos Greene, went to Kristy's (and the appellant's) residence located at 2463 Woodland Avenue, Cleveland, Ohio, in the Woodhill Homes Estates, to get his son. While inside the home, Ross and Kristy argued. Ross exited the home, followed a few minutes later by Kristy. Kristy, with a baseball bat in hand, approached the car Ross had arrived in, took the thirty-day tag from the vehicle, and went back inside the home. Ross then went back inside the home to get the tag. A short time later, Ross exited the home carrying a cordless telephone; Kristy followed him outside. Ross and Kristy then argued loudly outside the home. At some point, Ross struck Kristy with the telephone, punched her, and threw her to the ground. Rogers came outside and, observing the fracas, unsuccessfully attempted to aid her daughter and went back inside to call the police. Rogers then obtained a pistol from
According to Mr. Carlos Green, he picked up Ross a short distance from the home and drove him to East 130th Street. After parking, they walked to East 126th Street and Griffing Avenue. At that point, a Ford Escort approached the pair of men. Inside the Escort was Rogers, Ms. Cazinave Moore (the driver), and a third person. Rogers, from her position as a passenger within the car, argued heatedly with Ross, with Ross jumping up and down and shouting profanities at Rogers as he walked across the street away from Rogers' vehicle. During this heated exchange, Rogers testified that she feared that Ross was about to fire shots at the vehicle as he was reaching into his coat, so she fired three shots at Ross; according to Mr. Greene, the first and second shots being fired as Ross was walking away, and the third shot striking him above the left eye as Ross turned back to face Rogers. Rogers claimed that the shooting was done in self-defense, but saw no weapon displayed by Ross. Mr. Greene testified that Ross was not armed.
Following the shooting, Moore drove away and Rogers asked her to take her to the police station so that she could turn herself in. Ms. Moore testified that Rogers pointed the firearm at her own head, but the third person took the gun from her. A short time later, Rogers jumped from the car and ran to the car of Mr. Alphonso Rogers (Rogers' son), who had gone out to look for his mother.
Alphonso Rogers testified that Rogers admitted shooting Ross and began to cry. A short time later, she ran away from her son.
At some later point, Rogers presented herself at the police station. Officer Eugina Vachie, who was working in the lobby of the police station, testified that Rogers turned herself in, stating, I'm the one who shot that boy. (Tr. 335.) Officer Vachie arrested Rogers and read her the Miranda rights.
Officer Raymond Chipgus, who investigated the shooting, testified that he found three spent shell casings at the scene of the shooting and knew the victim as associating with drug dealers, having arrested the victim a week prior to the shooting.
Officer Michael Howard testified that after she turned herself in, Rogers told him that she had shot the victim because he had beaten Kristy one too many times. (Tr. 363.)
Detective Thomas Lucey testified that the three shell casings were fired from the same gun, and that trace metal detection and gunshot residue tests performed by him on the victim were negative.
Detective Michael O'Malley, who interviewed Rogers after she had turned herself in, testified that Rogers asked to use a restroom, to which he commented that she not do anything stupid. Rogers responded by saying, I already did something stupid. (Tr. 451.)
The medical evidence gathered from the victim's autopsy indicated that the muzzle of Rogers' firearm was greater than four feet from the victim at the time of the gunshot. Drug screening indicated that the victim had consumed phencyclidine (a.k.a. PCP), marijuana and cocaine, and the medical experts testified that PCP can cause the user to be agitated and aggressive.
Subsequent to the verdict, the trial court sentenced Rogers on May 18, 1999, to three years on the charge of voluntary manslaughter, three years actual on the merged firearm specifications consecutive to the term on voluntary manslaughter, and six months on the charge of carrying a concealed weapon concurrent to the term on voluntary manslaughter.
This appeal presents three assignments of error.
 I THE TRIAL COURT ERRED WHEN IT EXCLUDED CHARACTER EVIDENCE OF THE VICTIM WHICH WAS OFFERED TO PROVE HE WAS THE AGGRESSOR.
Appellant complains that the trial court erred in: (1) excluding character evidence in the form of the victim's juvenile delinquency conviction for having carried a concealed weapon and its inference that he had a propensity for violence; and, (2) preventing all witnesses, except the defendant, from testifying as to prior conduct by the victim to demonstrate the victim's propensity for violence and drug dealing.
Evid.R. 404(A)(2), Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes, provides:
(A) Character evidence generally
 Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
* * *
 (2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecution for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
* * *
Evid.R. 405, Methods of Proving Character, provides:
(A) Reputation or opinion
 In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
(B) Specific instances of conduct
 In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
In State v. Spinks (Cuyahoga, 1992), 79 Ohio App.3d 720, 730, citing State v. Carlson (1986), 31 Ohio App.3d 72, paragraph one of the syllabus; State v. Brown (May 7, 1987), Cuyahoga App. No. 52098, unreported; and Evid.R. 404(A)(2) and 405, this court stated:
 A defendant, when arguing self-defense, may testify about specific instances of the victim's prior conduct which were known to the defendant in order to establish the defendant's state of mind. (Italicization added.)
Accord State v. Scott (Sept. 7, 1995), Cuyahoga App. No. 67148, unreported, 1995 WL 527597, at 9-10 (Judge Dyke, with Judges Patton and John V. Corrigan, concurring).
The Spinks court further determined that corroborating evidence of the victim's character, offered to substantiate the accused's testimony through a police report was properly excluded pursuant to Evid.R. 405(B) and State v. Carlson, supra, at 74 (The victim's character is not an essential element of self-defense.).
In the case sub judice, Rogers sought to use juvenile delinquency records, representing a specific instance of conduct by the victim, to demonstrate the victim's alleged propensity toward violence in support of her claim of self-defense. This evidence was properly excluded because the victim's character is not an essential element of the claim of self-defense and the specific conduct sought to be admitted was not known to the accused. Statev. Spinks, supra; State v. Carlson, supra; Evid.R. 404(A)(2) and 405(B).
The first assignment of error is overruled.
 II THE TRIAL COURT ERRED WHEN IT ADMITTED A SCHEMATIC DRAWING WHICH DID NOT REASONABLY REFLECT THE SUBJECT MATTER.
In this assignment, appellant argues that the court erred at the close of the prosecution's case in admitting into evidence a freehand drawing of a map depicting the area of the crime scene. The drawing was made on a grease board and was not drawn to scale in that the distances were approximations. This exhibit was utilized during direct and cross-examination to demonstrate the location of the victim, the location of the vehicle Rogers was traveling in, and the location where the three shell casings were found following the shooting. The record also reflects that the court overruled the objection to this piece of evidence because the court conducted a jury view of the crime scene.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173. The admission into evidence of the exhibit in question does not indicate an abuse of the court's discretion. The map, although not drawn to scale, would assist the jury in proving or disproving factual issues regarding the position of the parties at the scene of the shooting. The fact that the map was not drawn to scale does not automatically render the map to be confusing or of no use to the jury since the jury personally viewed the shooting scene and, coupled with the direct and cross-examination testimony relating to distances, could use their recollection to determine the spatial distances represented on the map. Even if the admission of the exhibit were error, we would conclude that the error was harmless because the evidence indicated that the victim was practically across the street, and traveling on foot away from Rogers' position, at the time of the shooting. Therefore, the spatial accuracy of the map was of little importance and no prejudice to Rogers.
The second assignment of error is overruled.
 III THE GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN THE DEFENDANT PROVED SELF-DEFENSE BY A PREPONDERANCE OF THE EVIDENCE.
The standard of review for a manifest weight of the evidence argument was recently stated by this court in State v. Jinna (Feb. 17, 2000), Cuyahoga App. No. 74676, unreported, 2000 WL 193141, at 4 (Judge Corrigan, with Judges Dyke and Patton, concurring):
 State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all the reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42.
 Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. City of Cleveland (1984), 150 Ohio St. 303, 345.
 The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982), 457 U.S. 31, where it determined that, unlike a reversal based upon insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal; i.e., invocation of the double jeopardy clause as a bar to re-litigation. Id. at 43. Additionally, only a concurring majority of an appellate panel is needed to reverse a judgment based upon the sufficiency of the evidence as opposed to the unanimous concurrence of all three appellate judges necessary for a reversal based upon the manifest weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 An appellate court does not and cannot sit as the "thirteenth juror" when reviewing a claim based upon the weight of the evidence. Rather, we must accord due deference to the credibility determinations made by the trier of fact. See State v. DeHass, supra. As this court has previously stated in State v. Thompson (Apr. 23, 1998), Cuyahoga App. No. 72044, unreported:
 The fact-finder, being the jury (in the case) or the trial judge (in a waiver), occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witnesses and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor.
In the case sub judice, Rogers argues that the weight of the evidence demonstrated the claim of self-defense. We cannot say that the underlying verdict is against the manifest weight of the evidence. The evidence demonstrated that Rogers armed herself and sought out Ross after Ross had left Rogers' home. Rogers had no inkling that Ross may be armed with a firearm; he certainly never displayed any weapon on the date of the offense. There was also competent evidence which reflected that Ross was almost across the street and was traveling away from Rogers, with his back turned away from Rogers, at the moment when Rogers first started shooting at Ross. In summary, contrary to the appellant, there was competent and credible evidence upon which the jury could conclude that: (1) Rogers escalated the violent situation by seeking out Ross and engaging in a heated argument as Ross was walking away from Rogers, and not otherwise avoiding the danger by ordering the driver to leave the scene prior to engaging the use of deadly force; and, (2) Rogers did not have a bona fide belief that she was in imminent danger of death or great physical harm at the time she shot at Ross. See State v. Jackson (1986), 22 Ohio St.3d 281, 284
(the cumulative elements of self-defense include the accused showing that (1) he/she was not at fault in starting the affray, and that (2) he/she had a bona fide belief that he/she faced imminent danger of death or great bodily harm and that his/her only means of escape was the use of deadly force, and that (3) he/she violated no duty to retreat or avoid the danger); State v.Williford (1990), 49 Ohio St.3d 247, 249 (the Court held (1) there is no duty to retreat from one's home and that (2) if a person reasonably believes that a family member is in imminent danger of death or serious physical harm, such person may use reasonably necessary force to defend the family member to the same extent as the family member would be entitled to use force in self-defense).
The third assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., and JOHN T. PATTON, J., CONCUR.
 _______________________ JAMES D. SWEENEY, JUDGE
[1] Appellant was originally indicted on one count of murder, carrying a concealed weapon, and two firearm specifications. inside the home and went back outside. By the time she arrived outside, Ross, and the car he had arrived in, were gone.