DECISION.
Defendant-appellant John Wedge was charged with two counts of assault in violation of R.C. 2903.13(A)(3). Following a jury trial, Wedge was convicted of one count of assault, a fourth-degree felony. The trial court imposed an eighteen-month sentence, the maximum penalty for the offense. In the original appeal, Wedge asserted four assignments of error, none of which we found to be well taken in our decision and judgment entered on September 26, 2001.
In our judgment entry dated September 26, 2001, we declined to review Wedge's first assignment of error, which challenged the weight of the evidence, and his third assignment of error, which challenged the trial court's admission of an audiotape of police broadcasts under Evid.R. 803(8), because Wedge had not provided a transcript of the audiotape as required by App.R. 9.
On October 4, 2001, Wedge filed an application for reconsideration of our judgment as to his first and third assignments of error, which the state opposed. Finding Wedge's application to be well taken, we granted reconsideration on November 1, 2001. As a result, we vacate our prior decision of September 26, 2001, in its entirety and replace it with the following decision.
Before addressing Wedge's assignments of error on the merits,[1] we clarify this court's rule on the transcription of audiotape exhibits. InState v. Lane,[2] this court held that, because an audiotape was an exhibit and not part of the trial court's proceedings, it was not required to be transcribed pursuant to App.R. 9(A). We further stated that "prudence would dictate that the party seeking to rely on the contents of the tape submit a stipulated transcript of the tape or an intelligible tape for our review."
Since our decision in Lane, other appellate districts have stated just the opposite. They have held that an audiotape exhibit is part of the trial court's proceedings under App.R. 9 and must be transcribed for consideration on appeal.[3] Moreover, dicta from this court in three recent cases appears to suggest that our decision in State v. Lane has been inadvertently overruled, such that an audiotape exhibit need now be transcribed under App.R. 9 for this court's consideration on appeal.[4]
We hold, however, that State v. Lane is still good law. Thus, an audiotape exhibit is not part of the trial court's proceedings and is not required to be transcribed pursuant to App.R. 9(A) for consideration on appeal. As a result of this holding, we now address Wedge's first and third assignments of error on the merits.
 I. FACTS
On August 6, 2001, Cincinnati police officers Melissa Cummins and Brian Bender responded to a disorderly-conduct call at Quebec Road and Westwood. Officer Cummins arrived first at the scene and questioned Wedge, who matched the radio description of the disorderly-conduct suspect. Officer Cummins testified that Wedge initially gave her two false names and social-security numbers. At trial, Wedge admitted giving Officer Cummins false identification because he had violated his parole and feared going to jail.
Officers Cummins and Bender testified that while they were questioning Wedge, he was agitated and kept picking up a stick in a threatening manner. Because Wedge had given them false identification, Officers Cummins and Bender decided to arrest him. Both officers testified that, in the course of attempting to handcuff Wedge, Wedge bit Officer Bender on his hand. Officer Bender testified that Wedge bit him hard enough to break the skin and cause his hand to bleed. At trial, Officer Bender showed the jury his hand, which apparently still showed signs of Wedge's attack. Officer Bender also testified that he had received treatment at a hospital for the bite wound.
After biting Officer Bender, Wedge broke free from Officer Bender. Officer Bender tried to hold on to Wedge by grabbing Wedge's shirt, but the shirt ripped. Both officers then began a foot pursuit of Wedge, who was running away from them.
To counter Officer Cummins's and Officer Bender's testimony, the defense produced the testimony of three individuals, Marilyn Butler, Wedge's girlfriend, Doyle Carpenter, Wedge's neighbor, and Wedge himself. All three witnessed the officers' initial encounter with Wedge. Wedge's girlfriend testified that even though she had heard Officer Bender yell, "He bit me, " she did not see Wedge bite Officer Bender. Carpenter also testified that he did not see Wedge bite Officer Bender. Carpenter admitted, though, that he did not watch the entire encounter between the police officers and Wedge. Wedge testified that when he saw Officer Cummins reaching for her handcuffs, he jumped over Butler and ran. He denied biting Officer Bender.
During her foot pursuit of Wedge, Officer Cummins radioed for help. Over defense counsel's objection, the trial court permitted the state to play a recording of this transmission to the jury. In the transmission, Officer Cummins stated that she was on foot in pursuit of a white male with no shirt, who had just assaulted a police officer. Officers Cummins and Bender eventually caught up with Wedge. They testified that after Wedge was sprayed with Mace, they struggled with him on the ground for several minutes. Because Wedge had no shirt on and because the day was very hot, Wedge was "slimy" with sweat and difficult to subdue. Officer Cummins testified that while she was struggling with Wedge, he hit her in the jaw. As a result of the blow, she was taken to a hospital for treatment. The state introduced medical records documenting her injuries. Officer Cummins additionally testified that she had swelling and pain in her jaw for several days afterward.
The state also presented testimony from Officer Robert Studnicka, who had responded to Officer Cummins's radio call for help. Officer Studnicka testified that Wedge was difficult to restrain. Officer Studnicka also testified about Wedge's behavior following his restraint and arrest. The trial court, however, sustained several defense objections that severely limited Studnicka's testimony about Wedge's behavior after his arrest.
To counter the testimony of the state's witnesses about Wedge's restraint and arrest, the defense introduced the testimony of Monica Stephens. Stephens, who lived in the home with the backyard where Wedge was apprehended, testified that she had observed the entire encounter between Wedge and the police. She did not witness Wedge struggling with the police or striking Officer Cummins. She testified instead that Wedge had been sprayed with Mace, struck from behind by the butt of Officer Cummins's gun, and pushed face-down on the ground, where he was handcuffed. Wedge himself testified that he did not struggle with the police or strike Officer Cummins.
The jury found Wedge guilty of assaulting Officer Bender, but not guilty of assaulting Officer Cummins. The trial court imposed the maximum sentence of eighteen months in prison for the assault on Officer Bender.
 II. ASSIGNMENTS OF ERROR
In his first assignment of error, Wedge challenges the weight of the evidence. He contends that Officers Cummins's and Bender's testimony was disturbingly inconsistent about the details of their attempted arrest of Wedge and his alleged assault on Officer Bender. Wedge argues that this inconsistent testimony, coupled with the testimony of three defense witnesses-Butler, Doyle, and Wedge, who stated that Wedge did not bite Officer Bender — shows that the evidence was deficient to convict him of assaulting Officer Bender. Thus, he contends that the jury lost its way in finding him guilty. We disagree.
To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice.[5] "Weight is not a question of mathematics, but depends on its effect in inducing belief."[6] We may exercise our power to reverse on the weight of the evidence only in exceptional cases because "the weight of the evidence and the credibility of witnesses are primarily for the trier of fact, and an appellate court should not substitute its judgment."[7]
The jury found Wedge guilty of assaulting Officer Bender in violation of R.C. 2903.13(A). R.C. 2903.13(A) provides that "[n]o person shall knowingly cause harm to another or to another's unborn." R.C. 2903.13(C)(3) further provides that if the victim of the assault is a peace officer performing his official duties, the offense is a felony of the fourth degree.
While there were some discrepancies in Officer Bender's and Officer Cummins's testimony, we are not persuaded that the jury lost its way in concluding that Wedge bit Officer Bender on the hand. The record reveals that both Officer Cummins and Officer Bender testified that Wedge bit Officer Bender on the hand. Bender further testified that the bite drew blood, for which he sought medical treatment. At trial, Officer Bender showed the jury his hand, which still showed signs of Wedge's attack.
Although the testimony of Wedge and defense witnesses Butler and Doyle contradicted the state's evidence, the jury was free to believe all, part, or none of any witness's testimony.[8] Here the jury chose to believe the state's version of events rather than that set forth by Wedge, Butler, and Doyle. Because the weight to be given the evidence and the credibility of witnesses are primarily reserved for the trier of fact,[9] we overrule Wedge's first assignment of error.
In his second assignment of error, Wedge argues that he was denied a fair trial because the prosecutor raised allegations of other bad acts by Wedge in opening arguments, and because police testimony was presented relating to Wedge's actions after his arrest, in violation of Evid.R. 404. The state contends that the remarks made during the prosecutor's
opening statement did not deprive Wedge of a fair trial because the trial court instructed the jury on more than one occasion that opening statements were not evidence. The state further argues that the police testimony regarding Wedge's actions after his arrest did not deprive him of a fair trial because the trial court sustained Wedge's objections and issued a curative instruction to the jury. We agree with the state.
The record demonstrates that, in his opening statement, the prosecutor commented on Wedge's conduct after he was arrested for assaulting the two police officers. He stated that Wedge was "wild to the point where they had to call a scout car and strap him onto a gurney," and that he was cussing at the officers, was "combative" and "nasty," and was "biting and chewing on" an officer's shoe during his trip to the Justice Center. Wedge's attorney objected to the prosecutor's remarks, and the trial court instructed the jury that the prosecutor's opening statement was not evidence, but merely a preview of the evidence to be presented at trial. Given the fact that opening statements are not evidence,[10] and that the trial court so informed the jury at the time of the prosecutor's statements, Wedge has failed to demonstrate how these comments denied him a fair trial.
As for Officer Studnicka's testimony regarding Wedge's actions after his arrest, the record demonstrates that Wedge's attorney repeatedly objected to this testimony at trial. The trial court sustained all but one of the objections and even told the jury to disregard Officer Studnicka's testimony. Given that Wedge's objections were sustained and that the jury was given an appropriate curative instruction, Wedge cannot demonstrate that these comments denied him a fair trial.[11] Because there is nothing in the record to indicate that the jury failed to follow the trial court's instructions to consider only the evidence admitted at trial, we overrule his second assignment of error.
In his third assignment of error, Wedge claims that the trial court committed reversible error when it permitted the jury to hear an audiotape containing police broadcasts at the time of his alleged assault. Wedge argues that the tape was a police record prohibited under Evid.R. 803(8)(b) because it contained observations made by a police officer in a confrontational context.
Evid.R. 803(8) is the public-reports-and-records exception to the rule against hearsay. It provides the following:
 Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding however, in criminal cases matters observed by police officers and others law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness. [Emphasis added.]
 Thus, Evid. R. 803(8)(b) precludes as evidence in criminal cases reports that recite a police officer's observations of criminal activities or observations made as part of an investigation of criminal activities, unless offered by the defendant.[12]
Without this restriction, the state could simply use the public-reports-and-records exception to prove its case through police records rather than witness testimony.[13] Such a procedure would violate both the hearsay rule and an accused's constitutional right to confrontation.[14] Unlike evidentiary rulings that are within the trial court's discretion, the admission of hearsay is reviewed under the harmless-error standard.[15] Thus, when reviewing the admission of the audio recording in this case, we must determine whether the evidence in favor of Wedge's conviction was so overwhelming that the admission of Officer Cummins's broadcast was harmless beyond a reasonable doubt.
The record reveals that the trial court, over defense counsel's objection, allowed an audio recording of a police broadcast made by Officer Cummins while she was pursuing Wedge to be played for the jury. Defense counsel objected to this statement on the tape: "foot pursuit, male white, no shirt, assault on a police officer." When admitting the tape, the trial court stated that it would allow the tape as evidence because it corroborated Officer Cummins's prior testimony and because it was too inaudible to have any prejudicial effect on the jury.
While the trial court's admission of the audiotape of the police broadcasts may have been improper, its admission was, nevertheless, only cumulative of properly admitted testimony. The very brief statement "assault on a police officer" made by Officer Cummins was cumulative of both her and Officer Bender's testimony that Wedge had bit Officer Bender on the hand and then fled from the scene.[16] Wedge had the opportunity to cross-examine both Officers Cummins and Bender about their testimony. Thus, the purpose behind excluding the audiotape under Evid. R. 803(8)(b) would not have been furthered. Given the fact that the state produced ample evidence to support Wedge's conviction for assaulting Officer Bender and that the tape was otherwise inaudible, we hold that the trial court's admission of the audiotape was harmless error. As a result, we overrule Wedge's third assignment of error.
In his fourth assignment of error, Wedge argues that the trial court erred in sentencing him to the maximum period of incarceration when it failed to make the sentencing findings required by R.C. 2929.14(C). We disagree.
A defendant is entitled, pursuant to R.C. 2953.08(A)(1) and (4), to appeal as of right the maximum sentence imposed for his offense. Assault upon a peace officer is a fourth-degree felony under R.C. 2903.13(A)(3), for which a trial court may impose a prison term of six to eighteen months.[17] To impose the maximum sentence, a trial court must make one of the following findings: (1) that the offender committed the worst form of the offense; (2) that the offender poses the greatest likelihood of recidivism; (3) that the offender is a repeat violent offender; or (4) that the offender is a major drug offender.[18] In addition, the trial court must give reasons supporting the maximum prison term.[19] This court has stated that the sentencing statutes do not "require talismanic words from the sentencing court" as long as the reasons for the sentence are apparent from the record.[20]
Having reviewed the record, including the sentencing worksheet, the transcript of the sentencing hearing, and the presentence-investigation report, we are convinced that the trial court imposed the maximum sentence because it found, pursuant to R.C. 2929.14(C), that Wedge posed the greatest likelihood of recidivism. Although the trial court did not make any marks on the sentencing worksheet under the criteria for imposing the maximum sentence, the court stated during sentencing that Wedge had a "very bad record," that he had been in prison numerous times, and that he was on parole when he assaulted the police officer. These references were sufficient to constitute a finding that Wedge posed the greatest likelihood of recidivism. Thus, the trial court's imposition of the maximum sentence was appropriate, and that sentence is clearly and convincingly supported by the record. As a result, we overrule Wedge's fourth assignment of error. Because we find none of Wedge's assignments to be well taken, we affirm the judgment of the trial court.
Judgment affirmed.
Doan, P.J., Painter and Sundermann, JJ.
[1] We note that our analysis of Wedge's second and fourth assignments of error remains the same as that in our initial judgment entry.
[2] (1988), 49 Ohio App.3d 158, 159, 551 N.E.2d 994, 995, modifying the opinion published at (1988), 48 Ohio App.3d 172, 549 N.E.2d 193.
[3] See State v. Brown (1994), 97 Ohio App.3d 293, 297, 646 N.E.2d 838,841; State v. Baker (Nov. 2, 1995), Athens App. No. 94CA1644, unreported; In re Grand Jury (June 1, 1995), Washington App. Nos. 93CA09, 93CA10, and 93CA12, unreported; State v. Woods (June 13, 1991), Cuyahoga App. No. 58703, unreported.
[4] See State v. Aria (Dec. 8, 2000), Hamilton App. No. C-990848, unreported.
[5] See State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 547, citing State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720.
[6] See State v. Thompkins, supra, at 387, 678 N.E.2d at 546, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
[7] See State v. Sorrels (1991), 71 Ohio App.3d 162, 166, 593 N.E.2d 313,315.
[8] See State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548.
[9] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[10] See State v. Frazier (1995), 73 Ohio St.3d 323, 338,652 N.E.2d 1000, 1013.
[11] See State v. Laub (1993), 86 Ohio App.3d 517, 521-522,621 N.E.2d 585, 588.
[12] See State v. Ward (1984), 15 Ohio St.3d 355, 358, 474 N.E.2d 300,302.
[13] See State v. Joyce (Jun. 12, 1998), Ham. App. No. C-970642, unreported.
[14] See State v. Spinks (1992), 79 Ohio App.3d 720, 729,607 N.E.2d 1130, 1136.
[15] See State v. Sorrels (1991), 71 Ohio App.3d 162, 165,593 N.E.2d 313, 315; State v. Joyce, supra.
[16] See State v. Grant (1993), 67 Ohio St.3d 465, 470, 620 N.E.2d 50,59.
[17] See R.C. 2929.14(A)(4).
[18] See R.C. 2929.14(C).
[19] See R.C. 2929.19(B)(2)(d); State v. Edmonson (1999),86 Ohio St.3d 324, 328-329, 715 N.E.2d 131, 135.
[20] See State v. Parsons (Nov. 26, 1999), Hamilton App. No. C-980900, unreported; State v. Taylor (Dec. 26, 1997), Hamilton App. No. C-961141, unreported.