UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Edward SMITH,
Defendant-Appellant.

No. 75–1038.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 16, 1975.

Decided Oct. 30, 1975.

Lawrence E. Schauf, Asst. U. S. Atty. (E. Edward Johnson, U. S. Atty., on the brief), for plaintiff-appellee.

Daniel J. High, Asst. Federal Public Defender (Leonard D. Munker, Federal Public Defender, on the brief), for defendant-appellant.

Before HILL, SETH and DOYLE, Circuit Judges.

DOYLE, Circuit Judge.

This was a criminal prosecution in the district court in which the indictment charged the defendant with violation of the Dyer Act. The allegation was that on June 8, 1974, he unlawfully transported in interstate commerce from St. Paul, Minnesota to Wichita, Kansas, a stolen motor vehicle, a 1974 Mercury Capri bearing identification number VIN NA-GAECND25155, knowing the same to have been stolen contrary to 18 U.S.C. § 2312.

A plea of not guilty was entered on October 23, 1974. The trial started on December 2, 1974. It was delayed so that the jury returned a verdict of guilty on December 10, 1974. A five-year sentence pursuant to the Indeterminate Sentencing Act followed.

On this appeal defendant contends (1) that the court erred in denying his motion for continuance and for the issuance of a subpoena duces tecum, and (2) that the court erred in admitting his oral statements regarding the offense with which he is charged, which statements it is said were made during plea bargaining efforts of the defendant.

The arrest occurred in Wichita, Kansas, on June 8, 1974. Appellant was driving the subject automobile. The police officer who made the arrest intended to question him in connection with a rob-

bery which had occurred a short time before in Wichita. The officer had to pursue him for about a block before he succeeded in stopping the vehicle and this was accomplished only after a collision which wrecked the vehicle.

The controversy concerning the admissibility of the oral statements arises as a result of the defendant's statement at the time of the arrest in response to advice by the arresting officer as to *Miranda* rights that he did not wish to make a statement until he had consulted an attorney. Nevertheless, the officer continued to talk with the defendant, and the defendant responded with a fictitious name. Counsel for the accused did not at first object to receiving in evidence the giving of the name. He now contends that it was plain error for the court to receive it and for the officer to testify that a false name was given.

The June 10 and 11, 1974 statements were made only after the detective investigating gave a *Miranda* warning and secured a signed waiver from the defendant-appellant. The defendant then was in custody in Wichita on state robbery charges and was being held for Washington State on a federal bank robbery charge from the District of Washington.

On June 10, 1974, and also on June 11, defendant had requested an opportunity to speak with authorities. As indicated, he signed a waiver on both days. Initially on both days he said that he did not want to discuss the possible Dyer Act charge and the officer testified that he was not with him for the purpose of questioning him concerning this. On the June 11 occasion the officer had gone there with an FBI agent in connection with the pending bank robbery charge. The entire purpose of the interviews on each of the days was to give the defendant an opportunity to plea bargain. In the course of general conversation, defendant said that he would plead guilty to all of the pending offenses if he could be assured of going to a federal institution.

The inculpatory statement testified to by the detective was to the effect that the only other thing he was involved in was the car he took in St. Paul, Minnesota, and drove to Wichita and was apprehended in.

It is the government's position that the inculpatory admissions having to do with the stolen car in Minnesota was wholly voluntary and given with full knowledge of defendant's rights. The ultimate question in regard to the giving of the fictitious name is whether the *Miranda* doctrine precludes the introduction of an admission given by the defendant after he has stated his unwillingness to talk until such time as he has consulted a lawyer. This latter statement was made at the time of the defendant's arrest on June 8. He asked to see the officer on June 10 and on June 11 for the purpose of discussing a plea of guilty.

## I.

■ Our initial inquiry is whether after an accused who has refused to make a statement, saying that he wishes to talk to a lawyer, can immediately thereafter effectively waive his rights. Ordinarily at least the waiver would not be effective, for to allow the police officers to continue to talk to the man could effectively nullify the doctrine. To do so would be contrary to the spirit of *Miranda,* which contemplates that once a defendant refuses to be questioned further or demands a lawyer, the questioning is to cease. Our court has recognized that continued questioning is invalid. *United States v. King,* 485 F.2d 353 (10th Cir. 1973); *United States v. Arnold,* 425 F.2d 204 (10th Cir. 1970); *United States v. Nolan,* 416 F.2d 588 (10th Cir. 1969).

■ In this case, however, we perceive no substantial error as a result of eliciting the name of the defendant even though it proved to be a false name and this fact was shown, because under the circumstances this does not appear to constitute prejudice. Nevertheless, on retrial the fact of the giving of the false name should not be repeated.

## II.

The question in the case which we regard as serious is the alleged error in receiving the June 10 and June 11 statements given in the course of plea bargaining. Although the accused had been arrested on June 8 and had demanded an attorney, one had not been assigned to him as of June 10 and June 11. On these dates, it was recalled, the accused, who was not represented, requested an opportunity also to talk to the officers for the purpose of plea bargaining. The government argues that the statement made by the defendant during these discussions in which he acknowledged the theft of the vehicle in St. Paul, Minnesota, was admissible, notwithstanding that it was given in the course of an effort on his part to strike a deal, so to speak, whereby he could enter a plea of guilty and receive dismissal of certain state charges.[1] The argument is that he was

---

1. There can be no question but that the conversation that was had was in the nature of plea bargaining. The testimony reveals the following: (The answers are given by a government witness, the local police officer Puckett, who was present at both the June 10 and June 11 sessions.)

Direct Examination:
Q. And was the substance or what questions and answers were asked and answers given concerning that automobile?
A. He stated the only other thing he was involved in besides what's involved in here was the car he took in St. Paul, Minnesota, and drove here to Wichita and was apprehended in.
R. at 56.

Cross-Examination:
Q. What was your purpose in talking to him?
A. Because he wanted to talk to me.
Q. But you didn't go into it with any preconceived ideas as to what you were going to talk about?
A. I tried to talk to him about it and he didn't want to talk about anything—
Q. You tried to talk to him on that date about the Dyer Act and he didn't want to talk about it?
A. About that and other things, yes.
Q. You said that he went ahead and signed some sort of a waiver on the 10th. He signed the waiver and still didn't want to talk to you about it?
A. He wanted to talk to me but not about the Dyer Act or about the—
Q. About the robbery?
A. The other charges that he was involved in, yes.
Q. So what he wanted to talk to you about had nothing to do with the crimes with which he was charged or you were investigating, is that right?
A. In a roundabout way. What he wanted to talk to me about was making a deal.
R. at 60.

\*　　\*　　\*　　\*　　\*　　\*

Q. Was the meeting on the 11th at your request or at his?
A. When I talked to him on the 10th, what he was concerned about was another charge in Seattle, Washington, on bank robbery. I told him that would be a federal charge and I would contact the F.B.I. and bring an agent up there to talk to him.
R. at 62.

Redirect Examination:
Q. Do I understand it correctly, Mr. Puckett, that the defendant asked or wanted to see you on the 10th?
A. Yes.
Q. And that's when he talked about making a deal involving some other federal crimes, isn't that correct?
A. Yes.
Q. And you then stated to him that you would bring an F.B.I. agent to talk to him, is that what you did?
A. That's correct.
Q. And on the 11th when yourself and Mr. Jim Miller from the F.B.I. talked with him, that was at his request, is that correct?
A. That's correct.
Q. What kind of deal was he talking about? He was talking about making a deal, what kind of deal was Mr. Smith concerned about?
A. He said that he would be willing to plead guilty to all charges providing that he could spend time in federal time, federal penitentiary.
Q. In other words, he wanted to go to the federal penitentiary rather than the state institution?
A. That's correct.
Q. Were any promises made to him concerning that?
A. No, there was not.
Q. What was said to him about it?
A. I told him we couldn't promise him anything or guarantee him any type of deal. All we could do was talk to the prosecutors and pass on what he had said.
R. at 63–64.

warned of his rights and chose to waive them.

The testimony which is set forth below eliminates any possible doubt as to the purpose of the accused to work out an arrangement, whereby he would serve federal time and thus avoid the state robbery charge. He expressed a willingness to plead to the federal charge in exchange. Officer Puckett recognized that this was the case because on June 11 he brought an FBI agent with him. We are aware that the defendant on each of these days executed a *Miranda* waiver, but we are not persuaded that this effectively negates the legal consequence of the plea bargaining. As far as the accused was concerned, he was not making a confession, he was seeking to reach an agreement with the authorities and the discussions were directed to that end.

■ The first question is whether discussions had during the course of plea bargaining are generally admissible as part of the government's case in chief. The answer is no, they are not, at least where the plea bargaining is by a lawyer. The proceedings during the plea bargaining are generally recognized to be privileged and inadmissible. *See United States v. Ross,* 493 F.2d 771, 775 (5th Cir. 1974), wherein it was said: "[I]t is immediately apparent that no defendant or his counsel will pursue [plea bargaining] if the remarks uttered during the course of it are to be admitted in evidence as proof of guilt." If the proceedings during plea bargaining could be introduced as inculpatory statements against the accused, there would not be very much plea bargaining. So, as a matter of policy it is essential that it be considered as privileged. Indeed such

lawyers' discussions have always been considered privileged. *See* McCormick Evidence § 274 (1972 ed.). *See also Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), barring use of a withdrawn plea of guilty against the defendant.[2]

The American Bar Association Standards Relating to Pleas of Guilty recommends that plea discussions and plea agreements are not to be admissible either for or against the defendant in any proceeding. 1968 Approved Draft § 3.4 states:

Unless the defendant subsequently enters a plea of guilty or nolo contendere which is not withdrawn, the fact that the defendant or his counsel and the prosecuting attorney engaged in plea discussions or made a plea agreement should not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings.

There are state decisions which recognize that plea discussions are not admissible into evidence. *See State v. Byrd,* 203 Kan. 45, 453 P.2d 22 (1969) (dictum). *See also People v. Hamilton,* 60 Cal.2d 105, 32 Cal.Rptr. 4, 383 P.2d 412 (1963).

Also, the Second Circuit in the course of interpreting New York law has stated that discussions during plea bargaining are not admissible. *See United States ex rel. Burke v. Mancusi,* 425 F.2d 1061, 1062 n.2, 1063 (2d Cir. 1970) (habeas corpus proceeding).

The Supreme Court in *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) recognized the efficacy of plea bargaining as a necessary part of the criminal procedure.

We do not argue either in favor or against plea bargaining in considering

---

Recross Examination:
Q. Was this business about the deal and the federal time versus the state time, was this in a conversation on the 10th or on the morning of the 11th?
A. Both.
R. at 64.

**2.** Other cases which recognize this in relationship to a withdrawn plea of guilty are the

following: *Oliver v. United States,* 202 F.2d 521 (6th Cir. 1953); *Jamail v. United States,* 37 F.2d 576 (5th Cir. 1930); *Harris v. Anderson,* 364 F.Supp. 465 (D.N.C.1973); *United States ex rel. Spears v. Rundle,* 268 F.Supp. 691 (E.D.Pa.1967), aff'd, 405 F.2d 1037 (3d Cir. 1969); 8 Moore's Federal Practice ¶ 11.02(2).

the present question except to state that if it is to be carried on, the discussions cannot be admissible in evidence, for to permit this would effectively thwart the effort.

The Court of Appeals for the District of Columbia in *United States v. Walker,* 154 U.S.App.D.C. 6, 473 F.2d 136, 137 (1972) recognized the possible prejudice of information concerning a tendered plea of guilty when it established a guideline which provided that in a prospective non-jury case the judge should not be informed that the defendant had offered a guilty plea to any of the charges and, further, if such information were to be brought to the court's attention, the judge should recuse himself or impanel a jury to find the facts.

Rule 410 of the Federal Rules of Evidence forbids the introduction of an offer to plead guilty or of statements made in connection with the plea or offer.[3] Similarly, the new Federal Rules of Criminal Procedure contain a provision along the same line.

This is Rule 11(e)(6) of the Federal Rules of Criminal Procedure effective August 1, 1975, the same effective date of the Rules of Evidence, and which supersedes Rule 410 of the Rules of Evidence quoted below. Rule 11(e)(6), *supra,* declares that evidence of a plea of guilty later withdrawn or a plea of nolo contendere or of any offers to so plead or statements made in connection with such pleas is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

These Rules of Criminal Procedure and Evidence do not apply to the present situation (since they became effective at a subsequent time), but they serve to confirm and support the view we take that even before the adoption of the rules such evidence was inadmissible.

The remaining question is whether there is to be a distinction based on the fact that the defendant was not represented by counsel but was seeking to plea bargain on his own behalf. We do not consider this to be a valid basis for a different rule. The result we reach is fully supported by the recent decision of the Supreme Court in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), wherein the Supreme Court recognized that the accused has a constitutional right to make his defense. *Id.* at 2533.[4] If, then, the accused can represent himself generally, the line ought not to be drawn at plea bargaining on his own behalf. Such efforts are to be considered on the same bases as they would be considered if he had a lawyer.

This case considered in all its aspects is one of first impression. However, as is apparent from the authorities cited there are many signposts all of which

---

**3.** The full text of the Rule is as follows:

Except as otherwise provided by Act of Congress, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer. This rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement.

This rule shall not take effect until August 1, 1975, and shall be superseded by any amendment to the Federal Rules of Criminal Procedure which is inconsistent with this rule, and which takes effect after the date of the enactment of the Act establishing these Federal Rules of Evidence.

**4.** *Faretta* actually holds that the Sixth Amendment, as made applicable to the states through the Fourteenth, guarantees a defendant in a state criminal trial an independent constitutional right of self-representation. The decision relies on earlier cases which the Court takes as establishing the right in federal courts. *See Adams v. United States ex rel. McCann,* 317 U.S. 269, 279–80, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Snyder v. Massachusetts,* 291 U.S. 97, 100, 54 S.Ct. 330, 78 L.Ed. 531 (1934); *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).

\* \* \* \* \* \*

point to the conclusion which we have reached, which is that it was error to receive in evidence inculpatory admissions of the accused concerning the theft of the vehicle, which admissions were given in the course of plea bargaining. Moreover, we consider the receipt of this evidence to have been a substantial error which requires reversal.

The judgment of the district court is therefore reversed, and the cause is remanded for a new trial in accordance with the views expressed herein.