**UNITED STATES of America**

v.

**Ray Arnold GENTRY.**

**No. 80–20011.**

United States District Court,
M. D. Tennessee,
Northeastern Division.

Dec. 8, 1980.

Hal Hardin, U. S. Atty., William M. Cohen, Asst. U. S. Atty., Nashville, Tenn., for plaintiff.

William Farmer, Federal Public Defender, Ross Alderman, Asst. Federal Public Defender, Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, Chief Judge.

Defendant Ray Arnold Gentry seeks to suppress statements given by him to agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") on June 6, 1980, and June 12, 1980.

On June 6, 1980, pursuant to a telephone call from officers of the Smith County Sheriff's Department, ATF Agents Julian Bomar and John Batts traveled from Nashville, Tennessee, to Carthage, Tennessee, to assist in the investigation of the attempted bombing of Gentry's Service Center, Highway 25, Carthage, Tennessee. During the course of their initial investigation, Agents Bomar and Batts spoke with Mr. Gentry, the owner of Gentry's Service Center. Gentry related his activities on June 5, 1980, and gave some personal background information. Agent Bomar made notes during this conversation. Prior to the time Mr. Gentry spoke with the agents, he was not given his *Miranda* warnings. At that time, he was not a suspect in the attempted bombing, was not in custody, and was free to leave at anytime.

Agents Bomar and Batts spoke with the defendant again at his place of business on June 12, 1980. Prior to speaking to him, the agents took a photograph of Mr. Gentry. They then asked Mr. Gentry to enter their car. He did so voluntarily. Agent Bomar sat in the driver's side of the front seat of the car, Agent Batts sat in the rear seat of the car, and the defendant sat in the right front seat. At this time, Mr. Gentry was not under arrest and was free to leave.

Agent Bomar questioned Mr. Gentry about his activities on June 5, 1980. He told Mr. Gentry that he desired to reduce Mr. Gentry's statement to a signed, sworn statement. At that time, Mr. Gentry's eyes became moist. He asked the agents if people normally received probation for a similar type of occurrence. Agent Bomar then advised the defendant of his *Miranda* rights. The defendant stated he understood his rights and would talk to the agents. The defendant was then informed by Agent Bomar that he (Agent Bomar) was not aware of anyone who had received probation for a similar offense. He added that the judge would decide what sentence would be imposed, but if Mr. Gentry cooperated, his cooperation would be made known to the Court and the United States Attorney. The defendant and Agent Bomar then had a discussion about when Agent Bomar would complete his case report. The defendant had some religious revivals he wanted to attend in July and August 1980 and did not want any interference with such meetings. Agent Bomar informed the defendant that the case report would not be prepared prior to the first of September. He was further advised that he would not be placed under arrest.

Mr. Gentry and Agent Bomar also had a discussion about publicity. The defendant was concerned about publicity, and pursuant to the defendant's initiation of the conversation concerning publicity, Agent Bomar advised the defendant that he would not make a press release on the case. He added if the defendant so chose the defendant could receive less publicity if he pleaded guilty to an information filed by the United States Attorney's Office.

Following these initial discussions, Agent Bomar took a statement from the defendant. After making an addition to the statement, the defendant signed it. Mr. Gentry was not arrested at that time.

To the extent that the defendant's testimony differs from the above recitation, the Court rejects it. Except for the conversation hereinbefore set forth, the Court specifically rejects the entire testimony of the defendant of his discussions with Agent Bomar concerning probation.

■ As to the statement made by the defendant to Agent Bomar on June 6, 1980, it is clear that such statement is admissible. Such statement was voluntarily made when the defendant was not in custody. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Johnson v. Havener,* 534 F.2d 1232, 1235 (6th Cir.), *cert. denied,* 429 U.S. 889, 97 S.Ct. 245, 50 L.Ed.2d 171 (1976). As to the written statement made by the defendant on June 12, 1980, the Court similarly finds that it is admissible, inasmuch as it was voluntarily made after the defendant knowingly and intelligently waived his *Miranda* rights. *See Miranda v. Arizona, supra; Johnson v. Havener, supra.*

■ The defendant contends that his written statement should not be admissible under Rule 11(e)(6) of the *Federal Rules of Criminal Procedure* and Rule 410 of the *Federal Rules of Evidence* since it was made during the course of plea bargaining. The Court rejects such contention. Applying the two-tier analysis enunciated in *United States v. Robertson,* 582 F.2d 1356, 1366, (5th Cir. 1978),[1] and carefully evaluating the defendant's after-the-fact expressions of intent, *United States v. Geders,* 585 F.2d 1303, 1305 (5th Cir. 1978), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2031, 60 L.Ed.2d 396

(1979), the Court finds that the defendant did not exhibit an actual subjective expectation to negotiate a plea at the time he gave his written statement. The totality of the circumstances surrounding the defendant's giving of such statement establish that no reasonable person could construe the preliminary discussions between the defendant and Agent Bomar as plea discussions.[2] What occurred in this case was that Agent Bomar told the defendant that his cooperation would be made known to the United States Attorney and the Court. The facts in this case clearly do not constitute plea negotiations. The statements made by the defendant to the agent are not inadmissible under either Rule 11(e)(6) or Rule 410. *See, e. g., United States v. White,* 617 F.2d 1131, 1133–34 (5th Cir. 1980); *United States v. Pantohan,* 602 F.2d 855, 857 (9th Cir. 1979); *United States v. Watson,* 591 F.2d 1058, 1061 (5th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979); *United States v. Robertson, supra; United States v. Moore,* 463 F.Supp. 1266, 1272 (S.D.N.Y.1979). Moreover, the mere fact that in response to an inquiry from the defendant, Agent Bomar informed the defendant that one way that the defendant could avoid publicity was by pleading to an information filed by the United States Attorney does not transform the discussions into plea negotiations. The defendant did not evidence any intent to enter into a plea bargaining agreement at the time of such inquiry. Thus, the Court finds that Rule 11(e)(6) and Rule 410 are inapplicable here, and that the defendant's June 12, 1980, statement is admissible at trial. *United States v. Robertson, supra; United States v. Moore, supra.*

There have been cases in which courts have refused to allow the admission of statements pursuant to Rule 11(e)(6) and

---

1. In *United States v. Robertson, supra* at 1366, the Court held that in determining whether a defendant made a statement pursuant to plea bargaining agreement, a trial judge must apply a two-tier analysis and determine:

    A. Whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion.

    B. Whether the accused's expectation was reasonable given the totality of the circumstances.

2. As noted above, the Court totally rejects defendant's testimony concerning his purported discussion with Agent Bomar about the resolution of this case for probation.

Rule 410. *See, e. g., United States v. Herman*, 544 F.2d 791 (5th Cir. 1977); *United States v. Smith*, 525 F.2d 1017 (10th Cir. 1975). To the extent that such determinations are contrary to the holding in this case, the Court declines to follow them. In each of those cases, there were actual plea negotiations taking place, and the defendant was bargaining for a quid pro quo.[3] However, no such negotiations took place here, and no quid pro quo was bargained for. Moreover, *Herman* and *Smith* were decided some years ago, and the holdings in those cases have not been followed in more recent court decisions. *See, e. g., United States v. White, supra; United States v. Watson, supra.* In fact, in *United States v. Geders, supra*, 585 F.2d at 1305, the Fifth Circuit, sitting en banc, declined to follow the earlier panel decision in *United States v. Herman, supra. See also United States v. Pantohan, supra*, 602 F.2d at 857.

The decision in *Herman* has also been criticized. In *United States v. Grant*, 622 F.2d 308, 313 (8th Cir. 1980), the court declined to follow *Herman*, holding that it extended the scope of Rule 11(e)(6) and Rule 410 "far beyond their intended boundaries." (footnote omitted). Similarly, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States was critical of *Herman*. In the report on the Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, the Committee stated:

While this history shows that the purpose of Fed.R.Ev. 410 and Fed.R.Crim.P. 11(e)(6) is to permit the unrestrained candor which produces effective plea discussions between the "attorney for the government and the attorney for the defendant or the defendant when acting pro se," given visibility and sanction in rule 11(e), a literal reading of the language of these two rules could reasonably lead to the conclusion that a broader rule of inadmissibility obtains. That is, because "statements" are generally inadmissible if "made in connection with, and relevant to" an "offer to plead guilty," it might be thought that an otherwise voluntary admission to law enforcement officials is rendered inadmissible merely because it was made in the hope of obtaining leniency by a plea. Some decisions interpreting rule 11(e)(6) point in this direction. See *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977) (defendant in custody of two postal inspectors during continuance of removal hearing instigated conversation with them and at some point said he would plead guilty to armed robbery if the murder charge was dropped; one inspector stated they were not "in position" to make any deals in this regard; held, defendant's statement inadmissible under rule 11(e)(6) because the defendant "made the statements during the course of a conversation which he sought concessions from the government in return for a guilty plea")'; *United States v. Brooks*, 536 F.2d 1137 (6th Cir. 1976) (defendant telephoned postal inspector and offered to plead guilty if he got 2-year maximum; statement inadmissible).[4]

The amendment makes inadmissible statements made "in the course of or as a consequence of" a later withdrawn guilty plea, a plea of nolo contendre, or "plea discussions with the attorney for the government" which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. It thus fully protects the plea discussion process authorized by rule 11 without attempting to deal with confrontations between suspects and law enforcement agents, which involve problems of quite different dimensions. See, e. g., ALI Model Code of Pre-Arraignment Procedure Art. 140 and § 150.-

3. In *Herman*, during the time he was making inculpatory statements, the defendant said he would plead guilty to robbery charges if the authorities would drop murder charges against him. *United States v. Herman, supra* at 793. And in *Smith*, the defendant made an inculpatory statement pursuant to a conversation in which he said that he would plead guilty if he could be assured of going to a federal institution. *United States v. Smith, supra* at 1018.

4. In *Brooks*, the statement that was held to be inadmissible was the fact that the defendant offered to plead guilty.

2(8) (Proposed Official Draft, 1975) (latter section requires exclusion if "a law enforcement officer induces any person to make a statement by promising leniency"). This change, it must be emphasized, does not compel the conclusion that statements made to law enforcement agents, especially when the agents purport to have authority to bargain, are inevitably admissible. Rather, the point is that such cases are not covered by the per se rule of 11(e)(6) and thus must be resolved by that body of law dealing with police interrogations.

77 F.R.D. 507, 534–35 (1978). *See also, United States v. Grant, supra* at 313 n.3; 2 Weinstein's Evidence ¶ 410[08] (1980). Thus for this reason also, the Court declines to follow *Herman* and *Smith.*

Accordingly, the Court finds that the statements made by the defendant on June 6, 1980, and June 12, 1980, are admissible and that defendant's motion to suppress must be denied.