The defendant-appellant, Gail Weston, was charged with the murder of one Lester Sevy, with whom she was residing at the time of his fatal stabbing, which occurred about midnight on the evening of May 1 or the early morning of May 2, 1996. An indictment was returned against her on the charge of murder, R.C. 2903.02(A) on May 16, 1996. After a five-day jury trial commencing on July 14, 1997, appellant was found guilty of involuntary manslaughter, R.C. 2903.04(A). On August 18, 1997, she was sentenced to the Marysville Correctional Institution for a term of eight to twenty-five years.
A timely notice of appeal was filed presenting four assignments of error for our review:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR JURY INSTRUCTIONS ON THE BATTERED WOMAN'S SYNDROME.
 II. THE TRIAL COURT ERRED WHEN IT ADMITTED THE TESTIMONY OF GAIL WESTON INTO EVIDENCE PERTAINING TO PLEADING GUILTY TO INVOLUNTARY MANSLAUGHTER.
 III. THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANT'S MOTION TO SUPPRESS WITH RESPECT TO GAIL WESTON'S UNMIRANDIZED STATEMENT.
 IV. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION IN LIMINE TO INTRODUCE A SERIES OF VIOLENT ACTS TO CORROBORATE GAIL WESTON'S TESTIMONY REGARDING SPECIFIC BAD ACTS PERFORMED BY LESTER SEVY.
 Statement of the Case
The events of May 1, 1996, and May 2, 1996, resulting in the death of Lester Sevy at the hands of the appellant, took place in Belpre Township, Washington County, Ohio, in a mobile home on Lot 17 of the Camelot West Trailer Park, the residence of the appellant and the victim.
About midnight on the evening of May 1, 1996, the Belpre Police Department received a call from the appellant requesting assistance. The Belpre Fire Department emergency squad and the Washington County Sheriff were dispatched to the scene. Fireman Eric Sinnett was first to arrive at the mobile home, where he found an elderly man slumped beside a chair in the living room. Appellant identified the man as Lester Sevy, age sixty. At first she said he had fallen, then she said he stabbed himself in a suicide attempt. Mr. Sinnett discovered a one-inch wound under Mr. Sevy's left armpit and a considerable amount of blood from this wound.
At approximately 12:30 a.m., May 2, 1996, Washington County Sheriff's Deputy Richard Hays arrived at the scene. A second emergency squad had arrived and was performing cardiopulmonary resusitation on Mr. Sevy while appellant was on the telephone in another part of the living room. When the squad members advised Deputy Hays that Mr. Sevy could not be revived, he escorted appellant out of the trailer and placed her in the back of his cruiser. By that time, other deputies and their captain, Chris Forshey, had arrived. Deputy Hays stayed with appellant while the other deputies secured the crime scene.
Deputy Hays testified that appellant had blood on her clothes, an odor of alcohol about her, and appeared to be intoxicated. Since the deputy did not want her to return to the crime scene, he placed her in the back seat of his cruiser where she remained for about two hours. He did not arrest her, however, and permitted her to smoke while sitting with the cruiser door open.
Both Deputy Hays and Captain Chris Forshey questioned her for identification purposes and to identify the victim and any next of kin. She volunteered several statements, repeating her previous story that Mr. Sevy had stabbed himself and that she had removed the knife. Captain Forshey also testified that the appellant appeared intoxicated and that he did not attempt to explain her "Miranda" rights because he felt she was too intoxicated to consent to any questioning. He also testified that at one point appellant stated there had been a murder, but she corrected herself and reiterated her story of the suicide.
Detective James Moon arrived at the crime scene at 3:00 a.m. in the Washington County Sheriff's crime scene van with a search warrant for the mobile home. He escorted appellant to the van in order to gather trace evidence. While gathering samples of blood spattered on her skin, he asked if she had any injuries. He noticed one fingernail had been bent back to the quick, scraped knuckles, and some bruises, but no obvious injury that would cause extensive bleeding. Detective Moon testified that he too noticed a strong smell of alcohol from the appellant.
"I saw a murder," changing this to "I saw someone die."
By this time, appellant's mother had arrived at the scene. Appellant became belligerent with Detective Moon, and appellant's mother refused to take appellant home with her. Appellant was then arrested, taken to the Washington County Jail, and charged with disorderly conduct, a misdemeanor of the fourth degree.
On the morning of May 2, 1996, at 8:25 a.m., Captain Forshey interviewed appellant at the Washington County Jail. Deputy Hays was also present, standing in the doorway of the interrogation room. Both officers testified that appellant was much calmer and more coherent than she had been earlier that morning, though she still retained some odor of alcohol about her person. Captain Forshey read the "Miranda" warnings to her, using a card he carried for that purpose. Appellant replied that she understood these rights, and Captain Forshey began the interview.
Appellant told Captain Forshey that she had been living with the victim for about two years, but she had decided the relationship was over and she was going to leave. She stated that they had been fighting for some time. On the evening of May 1, 1996, the confrontation became more intense and violent. She tried to leave the mobile home, but Mr. Sevy prevented her from doing so. Finally, Mr. Sevy picked up a knife from the kitchen and threatened her. Appellant stated that while Sevy held the knife by its handle, she grabbed the knife by the blade, got it away from the victim, and stabbed him once under the left arm.
After reviewing these events with Captain Forshey, appellant stated to him that she knew she was going to be charged with murder, and she would just as soon plead to involuntary manslaughter because she didn't intend to kill Mr. Sevy.
The appellant was charged with the murder of Lester Sevy. She subsequently filed a motion to suppress any statements made by her at the scene of the crime. After a hearing on September 23, 1996, the court denied her motion, finding these statements to be voluntary and not the product of a custodial interrogation.
On February 5, 1997, appellant filed a motion in limine, seeking to be allowed to use expert testimony to establish battered woman syndrome and seeking to introduce specific evidence of bad acts by the victim, Lester Sevy, to corroborate her testimony. The court allowed the first request but denied the second. The matter was set for trial on July 14, 1997.
On July 11, 1997, the appellant submitted proposed jury instructions relating to self-defense and the battered woman syndrome. The trial court rejected these proposed instructions and formulated its own charge.
 Opinion I
Appellant's first assignment of error takes issue with the trial court's rejection of her proposed jury instructions on the battered woman syndrome and the resulting use of the court's own jury instructions relating to this issue.
Generally, a trial court has broad discretion in deciding how to fashion jury instructions. State v. Blair (Dec. 4, 1997), Meigs App. No. 96CA7, unreported. The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction if such instruction is "a correct, pertinent statement of the law and [is] appropriate to the facts * * *." State v. Lessin (1993), 67 Ohio St.3d 487,493, 620 N.E.2d 72, 77, citing State v. Nelson (1973), 36 Ohio St.2d 79, 303 N.E.2d 865, paragraph one of the syllabus. In determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. If the evidence does not warrant the instruction, or if the instruction is not appropriate to the crime charged, the trial court is not obliged to give the instruction. See Lessin,67 Ohio St.3d at 493, 620 N.E.2d at 78. Our review, therefore, is limited to a determination of whether the trial court abused its discretion when it rejected the proposed instruction, finding that this requested instruction was not pertinent to the crime charged.State v. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus. An abuse of discretion may be found if the trial court's attitude was unreasonable, arbitrary or unconscionable. See State v. Montgomery (1991), 61 Ohio St.3d 410,413, 575 N.E.2d 167, 171.
In order to successfully present the affirmative defense of self-defense, a defendant must prove, by a preponderance of the evidence, that: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and only could escape by using force, and (3) the defendant did not violate any duty to retreat or avoid the danger.State v. Thomas (1997), 77 Ohio St.3d 323, 326,673 N.E.2d 1339, 1342, citing State v. Williford (1990), 49 Ohio St.3d 247,249, 551 N.E.2d 1279, 1281, State v. Robbins (1979),58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.
The appellant's Proposed Jury Instructions, in part, were as follows.
 Self-defense: To establish self-defense, Ms. Weston must prove:
 1. She was not at fault in creating the situation giving rise to the death of Lester Sevy; and
 2. She had reasonable grounds to believe and an honest belief that she was in imminent or immediate danger or greater bodily harm and that her only means of escape from such danger was by use of deadly force.
 In deciding whether Ms. Weston had reasonable grounds to believe [sic] an honest belief that she was in imminent or immediate danger of death or great bodily harm, you must put yourself in the position of Ms. Weston with her characteristics and her knowledge or lack of knowledge and under the circumstances and conditions that surrounded her at the time. You must consider the conduct of Lester Sevy and decide if his acts or words caused Ms. Weston to reasonably and honestly to believe that she was about to be killed or received [sic] great bodily harm.
 The law does not measure nicely the degree of force which may be used to repel an attack. However, if Ms. Weston used more force than reasonably appears necessary under the circumstances and the force used is so greatly disproportionate to her apparent danger as to show an unreasonable purpose to injure Lester Sevy then the defense of self defense is not available. Ms. Weston has presented expert testimony concerning Battered Woman Syndrome. The purpose of this testimony is to assist you in understanding the behavior and perceptions of Ms. Weston, and her state of mind at the time of the incident.
 For instance, you may consider this testimony in judging Ms. Weston's actions or her failure to act. Those actions might include, for example, her actions in the years, months and days prior to the incident, her behavior just prior to the incident, her actions, perceptions, and behavior during the incident, and her actions, perceptions and behavior after the incident. You may consider the testimony about the effects of battering on woman generally, as well as the effects of battering on Ms. Weston specifically.
 You may also consider the expert testimony in evaluating both parts of the self defense test, that is, one, whether she honestly believed that she was in imminent or immediate danger and whether that belief was reasonable, and, two, whether she was at fault. You may consider how her experiences as a battered woman may have affected her perceptions of danger, how imminent or immediate she perceived the danger to be and what she believed she had to do to protect herself. You may also consider the expert testimony in deciding whether her belief was reasonable, that is, whether in the light of her experiences as a battered woman, a person in the circumstances and from the view point of Ms. Weston would have reasonably believed she was in imminent or immediate danger.
The Instruction to the Jury utilized by the trial court follows in relevant part:
 Now, the defense of self-defense is a complete defense to the charge brought against the defendant. If you find that the defendant proved that she caused, the death of Lester Sevy while she was acting in self-defense, as I shall fully explain, then she's not guilty of murder or any lesser offense.
 If the defendant has not proved self-defense by a preponderance of the evidence, the state still must prove each and every element of murder or any lesser offense.
 Now, to establish self-defense, the defendant must prove she was not at fault in creating the situation that gave rise to the event in which the death occurred; and second, that she had an honest belief that she was in imminent or immediate danger of death or great bodily harm and that her only means of escape from that danger was in the use of deadly force. A person, who through no fault of her own, is assaulted in her own home has no duty to retreat.
 Reasonableness. In determining whether the defendant had reasonable grounds for an honest belief that she was in imminent danger, you must put herself in her position, with her characteristics, her knowledge or lack of knowledge, and under the circumstances and conditions that surrounded her at the time. You must consider the conduct of Lester Sevy and determine if his acts and words caused her to reasonably believe that she was about to be killed or to receive great bodily harm.
 Battered Woman Syndrome. Testimony was offered concerning the battered woman syndrome, and that the defendant suffers from this syndrome. This testimony was offered to assist you in determining whether she acted out of an honest belief that she was in imminent or immediate danger of death or great bodily harm and that the force used by her was her only means of ending the danger. You may consider such testimony together with all the other evidence in determining whether she acted in self-defense.
 The law does not measure nicely the degree of force which may be used to repel an assailant. However, if a person uses more force than reasonably appears necessary under the circumstances and if the force is so grossly disproportionate to her apparent danger as to show revenge or an evil purpose to injure her assailant, then the defense of self-defense is not available.
 The defendant must establish that Lester Sevy was the aggressor and that she did not herself provoke and cause the injury. The defense of self-defense is not available to a person who starts a fight unless, in good faith, she withdraws from the contest and informs the other party of her withdrawal or by words and acts reasonably indicates that she has withdrawn and is no longer participating in the fight.
It is apparent that the trial court patterned its instructions on the instructions approved by the Supreme Court of Ohio in State v. Thomas, supra, at pp. 329-330.
As stated above, the second element of the affirmative defense of self-defense requires the defendant to prove that she had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force. State v. Williford; State v. Robbins,supra.
Jury instructions regarding this second element of self-defense in Ohio courts, as both an objective and subjective test, have a long history as well as substantial precedent emanating from the highest of judicial levels. The trial court's instructions correctly emphasized to the jury that the second element of self-defense is a combined subjective and objective test. In State v. Sheets (1926),115 Ohio St. 308, 310, 152 N.E. 664, self-defense "is placed on the grounds of the bona fides of defendant's belief, and reasonableness therefor, and whether, under the circumstances, he exercised a careful and proper use of his own faculties." See, also, McGaw v. State (1931), 123 Ohio St. 196,174 N.E. 741, paragraph one of the syllabus.
In State v. Koss (1990), 49 Ohio St.3d 213, 551 N.E.2d 970, at paragraph three of the syllabus, the Supreme Court of Ohio held that expert testimony explaining the characteristics of the battered woman syndrome is admissible to "assist the trier of fact to determine whether the defendant acted out of an honest belief that she is in imminent danger of death or great bodily harm and that the use of such force was her only means of escape." Accordingly, evidence of the battered woman syndrome serves to support the defendant's argument under the second element of self-defense and does not establish a new defense or justification independent of the defense of self-defense. Id.
In Koss, we find similar jury instructions to those given in the case sub judice:
 In determining whether the Defendant had reasonable grounds for an honest belief that she was in imminent danger, you must put yourself in the position of the Defendant * * *. You must consider the conduct of [the assailant] and determine if such acts and words caused the Defendant to reasonably and honestly believe that she was about to be killed or to receive great bodily harm. Koss, 49 Ohio St.3d at 216, 551 N.E.2d at 973.
Thus, the jury must first consider the defendant's situation objectively, that is whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, she reasonably believed she was in imminent danger. Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an honest belief that she was in imminent danger.
In contrast, the proposed instructions of the appellant would have allowed the jury to find that the appellant, because of her life history and prior experiences, not only with Lester Sevy, but also with other men in her life, suffered from, "battered woman syndrome." As a consequence of suffering from this syndrome, appellant's use of force in the circumstances that arose the night of May 1, 1996, resulting in Lester Sevy's death, flowed directly from "battered woman syndrome."
The appellant's proposed instructions would ask the jury to find that if appellant was a battered woman, then she had an affirmative defense to the charges presented. Adding these instructions would create an entirely new affirmative defense rather than charge the jury to consider the syndrome when they consider the appellant's state of mind regarding the second element of self-defense. Such an addition would have been improper.
The jury instructions given by the trial court in the casesub judice quite properly instructed the jury to consider all the circumstances when determining if appellant had an objectively reasonable belief of imminent danger and whether she subjectively, honestly believed she was in danger of imminent harm.
Accordingly, we find this assignment of error to be without merit, and it is OVERRULED.
 II
In the second assignment of error, appellant argues that the court below erred when it allowed the admission into evidence testimony regarding certain statements pertaining to her pleading guilty to involuntary manslaughter even though appellant's trial counsel failed to object to this testimony at trial.
On the morning of May 2, 1996, Washington County Sheriff's Captain Chris Forshey interviewed appellant Weston at the Washington County Jail. He began the interview by reading from a "Miranda" card and asking the appellant if she understood her rights. He then began his questioning of her.
As Captain Forshey testified during the trial, at one point during his interview with the appellant, she stated that she expected that she would be charged with murder, but would rather plead to involuntary manslaughter. Appellant's counsel did not object to this testimony. By failing to object at trial to the admission of statements made by her, she, therefore, failed to preserve and waived any claimed error for appellate review. See State v. Brown (1988), 38 Ohio St.3d 305,528 N.E.2d 523.
Appellant now argues that, despite her failure to object to this testimony at trial, the em is not waived but is "plain error." Therefore, she continues, the trial court, on its own motion, should have ruled this testimony inadmissible, and its failure to do so is grounds for reversal.
Appellant argues that the testimony is inadmissible under Evid.R. 410, in that the statement was offered as part of a plea negotiation, and cites State v. Frazier (1995), 73 Ohio St.3d 323, 652 N.E.2d 1000 in support thereof.
Frazier examines two Federal appellate cases from the sixth circuit: United States v. Swidan (E.D.Mich. 1988),689 F. Supp. 726, and United States v. Gentry (M.D.Tenn. 1980),525 F. Supp. 17. These courts applied a two-tiered analysis originally set forth in United States v. Robertson (C.A.5, 1978),582 F.2d 1356, 1366. These cases addressed Fed.R.Evid. 410, which is very similar to Ohio Evid.R. 410. Therefore, analysis based on these two Federal cases is appropriate in the case at bar.
The test of whether an accused's statements were made during plea discussions is to be determined on a case-by-case basis, in light of all the facts. Determination of the admissibility of statements made during alleged plea discussions is a two-step process. The trial court must first determine whether, at the time of the statements, the accused had a subjective expectation that a plea was being negotiated. Should the trial court find the existence of this subjective expectation, it must then determine whether this expectation of an accused was reasonable under the circumstances.
In the case at bar, the appellant has failed to establish that Captain Forshey began any discussions regarding a plea, nor is it clear that the appellant's statement was a specific offer to plead. The evidence does not support the appellant's conclusion that plea negotiations took place, nor is the rule intended to hamper police at such an early investigatory stage. See State v. Kidder (1987), 32 Ohio St.3d 279, 285,513 N.E.2d 311, 318.
We find that this statement by appellant was voluntary, properly admitted at trial, and cannot be deemed "plain error." Appellant's second assignment of error is OVERRULED.
 III
Appellant's third assignment of error involves the admissibility into evidence of statements made by her prior to receiving the "Miranda" warnings. After a pre-trial hearing on her suppression motion, the trial court denied appellant's motion to suppress these statements.
In the early morning hours of May 2, 1996, appellant spoke with several members of the Washington County Sheriff's office. Deputy Hays, who was first at the scene, had appellant leave the mobile home and sit in the back of his cruiser while the scene was secured. Captain Forshey arrived soon after and spoke to appellant while she was in Deputy Hay's cruiser. Later, Detective Moon spoke to appellant, while gathering physical evidence in the Sheriff crime scene van.
Both Deputy Hays and Captain Forshey questioned the appellant in order to identify who she was and who the victim was. Captain Forshey testified that he did not give the appellant "Miranda" warnings in those early morning hours at the scene because he felt she was too intoxicated to either understand or give consent to any further questioning. While collecting blood samples from appellant's skin, Detective Moon attempted to determine if she had any injuries. She was not under arrest at this time. Indeed, she was not arrested until later that morning when she became very belligerent and was arrested for disorderly conduct as a result of her belligerent conduct.
The appellant filed a motion to suppress any of the statements she made prior to her receiving "Miranda" warnings later that morning in the Washington County Jail, citingMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694, and Rhode Island v. Innis (1980), 446 U.S. 291,297, 100 S.Ct. 1682, 64 L.Ed.2d 2. The trial court denied her motion to suppress.
Miranda defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. See, also, Stansbury v. California (1994), 511 U.S. 318,114 S.Ct. 1526, 128 L.Ed.2d 293, and Oregon v. Mathiason (1977),429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714. The court in Oregon v.Mathiason stated that the Miranda protection attaches only where there has been such a restriction on a person's freedom as to render him in "custody".
In determining whether an individual subjected to police questioning was entitled to Miranda warnings, the reviewing court initially must ascertain whether the individual was "in custody." If the individual was not "in custody," there can be no "custodial interrogation," and, thus, Miranda warnings are unnecessary.
The question of whether an individual is "in custody" is a mixed question of law and fact entitled to independent review. See Thompson v. Keohane (1995), 516 U.S. 99, 116 S.Ct. 457,460, 133 L.Ed.2d 383. In deciding whether the individual was in custody, the reviewing court focuses on "the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury, supra. See Berkemer v. McCarty
(1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317
(stating that the relevant inquiry is how a reasonable person in the individual's position would have understood the situation). The reviewing court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler (1983), 463 U.S. 1121,1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (quoting Oregon v.Mathiason). A formal arrest, or its functional equivalent, exists if it appears that a reasonable person would have "no choice but to submit to the officers' will and to confess."Minnesota v. Murphy (1984), 465 U.S. 420, 433, 104 S.Ct. 1136,79 L.Ed.2d 409. Additionally, "the mere fact that an investigation has focused on a suspect does not trigger the need for Miranda warnings in noncustodial settings." Murphy,465 U.S. at 431. See State v. Biros (1997), 78 Ohio St.3d 426,439-442, 678 N.E.2d 891, 904-906; State v. Gregory (July 1, 1998), Pickaway App. No. 97CA33, unreported.
The appellant was kept in the back of Deputy Hay's cruiser for approximately two hours. She could not open the door from the inside, although she was allowed to sit with the door open and smoke a cigarette from time to time. Later she was taken to the Sheriffs van so that Detective Moon could swab blood samples from her skin. She was not formally arrested until she became belligerent with Detective Moon. However, it can be concluded that there was a "restraint on her freedom of movement" consistent with a formal arrest while in Deputy Hay's cruiser. See State v. Lee (Dec. 31, 1997), Trumbull App. No. 95-T-5371, unreported.
However, voluntary statements require no such prior "Miranda" warning by authorities. The United States Supreme Court set the standard in this area in Rhode Island v. Innis, supra.
 Any statement given freely and voluntarily without any compelling influences is, of course, admissible evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without benefit of the warnings and counsel, but whether he can be interrogated. Rhode Island v. Innis, 446 U.S. at 299-300.
See State v. Tucker (1998), 81 Ohio St.3d 431,692 N.E.2d 171.
What must be determined is whether the questions asked of the appellant by the Sheriffs deputies were reasonably designed to elicit an incriminating response, Innis, at 301. Routine questions by the police seeking to identify a person do not constitute an interrogation, see State v. Blair (Dec. 4, 1997), Meigs App. No. 96CA27, unreported, and Pennsylvania v. Muniz
(1990), 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d. 528.
Miranda was not designed to apply outside of the context of custodial interrogation. Miranda warnings are required only where custody and interrogation coincide. See State v. Wiles
(1991), 59 Ohio St.3d 71, 571 N.E.2d 97.
It does not appear that the statements the appellant moved the trial court to suppress were in response to any direct interrogation by the Sheriffs deputies, State v. Tucker, supra.
Statements that are the product of a defendant's "own initiative in absence of questions or any words or action likely to elicit an incriminating response " are not subject to Miranda protection, Akron v. Milewski (1985), 21 Ohio App.3d 140,141, 487 N.E.2d 582, 584.
Therefore, the trial court acted properly in refusing to grant appellant's motion to suppress these statements. Assignment of error number three is OVERRRULED.
 IV
The final assignment of error challenges the lower court's ruling denying appellant's motion in limine which sought to introduce extrinsic evidence of a number of prior violent acts of the victim, Lester Sevy. Appellant's proposed evidence was intended to corroborate her testimony regarding these specific "bad acts" of the victim.
Specifically, appellant sought to introduce a charge of domestic violence in Washington County from 1994, a charge of felonious assault in Athens County from 1995, and an earlier incident involving the deceased's ex-wife in 1986.
The trial court denied this request, finding that the appellant could testify to these incidents to establish her state of mind at the time, if she had personal knowledge of them at the time of the incident giving rise to the charge. However, the offered extrinsic evidence regarding these acts, whether as direct proof or for corroboration purposes, was inadmissible. Further, the request to introduce evidence of the 1986 conviction was denied as too remote in time.
Appellant objects, claiming the trial court erred in denying her motion. She cites State v. Baker (1993), 88 Ohio App.3d 204, 623 N.E.2d 672, for the proposition that corroborating evidence is admissible to demonstrate the victim's dangerous character, in order to establish her state of mind at the time of the incident.
In State v. Baker, the trial court excluded testimony that would have established the dangerous character of the victim. The defendant offered not only the testimony of two witnesses who were aware of the victim's reputation for violence, but also his personal knowledge of the victim's violent tendencies. This was found to be prejudicial error.
However, the Ninth Circuit Court of Appeals found that the trial court properly excluded evidence of a specific violent incident by the victim because the victim's character is not an element of self-defense, as is required under Evid.R. 405(A). See State v. Carlson (1986), 41 Ohio App.3d 72,508 N.E.2d 999.
In the case sub judice, the appellant has failed to demonstrate that the evidence she offered would have corroborated her testimony as to her state of mind at the time of the stabbing. To the contrary, it is apparent that this evidence was offered to demonstrate that the victim was more likely to have been the aggressor. In Marts v. State (1875),26 Ohio St. 162, the Supreme Court of Ohio stated that the dangerous character of the deceased could only be admissible in connection with proof that the character was known to the defendant.
However, disagreement now exists among the courts of Ohio concerning the admissibility of specific evidence of the victim's bad character. In State v. Schmidt (1979), 65 Ohio App.2d 239, 417 N.E.2d 1264, proof of the victim's character was found to be admissible, regardless of whether the accused had knowledge of such character. See, also, State v. Ingram
(Dec. 26, 1991), Summit App. No. 15049, unreported, where the accused sought to introduce the victim's medical records to show decedent's violent tendencies. In State v. Marsh (Oct. 20, 1995), Trumbull County App. No. 93-T-4855, unreported, the trial court improperly excluded the testimony of the victim's former spouse who would have testified to a threat made by the victim toward the accused. However, because the witness also communicated the threat to the accused, this testimony would have been admissible to corroborate the state of mind of the accused. See, as well, State v. Muscatello (Mar. 13, 1980), Cuyahoga App. No. 40484, unreported, (testimony of threats made to accused's sister-in-law, and to the accused were probative evidence of his state of mind).
Generally, evidence of the character of the victim is excluded when offered to show that the victim was likely to have been the aggressor. See State v. Carlson, supra, as well as State v. Woodruff (Dec. 31, 1997), Lake App. No. 96-L-111,State v. Rose (Mar. 2, 1992), Butler App. No. CA91-04-056, andState v. Carter (Mar. 18, 1983), Miami App. No. 82CA22, all unreported.
A trial court has broad discretion in the admission or exclusion of evidence, and as long as such discretion is exercised in line with the rules of procedure and evidence, an appellate court will not reverse the trial court's ruling, absent a clear showing of an abuse of discretion with attendant material prejudice to defendant. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058, State v. Hymore
(1967), 9 Ohio St.2d 122, 224 N.E.2d 126, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281. Therefore, we will not reverse such a decision absent an abuse of discretion by the lower court. State v. Combs (1991),62 Ohio St.3d 278, 284, 581 N.E.2d 1071, 1078, State v. Sage
(1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. The term "abuse of discretion" connotes more than a mere error of judgment. It implies that a lower court's attitude is unreasonable, arbitrary or unconscionable. State v.Xie (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719, Statev. Montgomery, supra.
A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140, 1142. When applying the abuse of discretion standard, this court will not substitute its judgment for that of the trial court. Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308. See State v.Redmond (Mar. 25, 1998), Ross App. No. 97CA2299, unreported.
The appellant, under certain circumstances, may properly offer character evidence in support of her claim of self-defense. In State v. Baker the court wrote at88 Ohio App.3d at 208, 623 N.E.2d 674:
 Whether evidence concerning the victim is admissible to prove self-defense depends upon the type of evidence being offered. Typically, such evidence falls into two general categories:
 (1) testimony concerning the victim offered to demonstrate the defendant's state of mind at the time of the incident, and
 (2) testimony about the victim's character offered to prove that the victim was more likely the aggressor.
For the first purpose, defendant' state of mind, resulting from her personal knowledge of the victim, the critical issue is what the appellant knew about Lester Sevy at the time of the confrontation. For that purpose, a defendant is permitted to testify about specific incidents of the victim's violent behavior, if the defendant was aware of them at the time of the confrontation. The defendant is also permitted to testify about what she knew concerning the victim's reputation for violence at the time of the confrontation. See State v. Williamson
(Sept. 12, 1996), Ross App. No. 95CA2155, unreported, and McGawv. State, supra, at paragraph two of the syllabus.
Article IV of the Ohio Rules of Evidence is entitled "Relevancy and Its Limits." " Therefore, application of Rules 404 and 405 regarding admissibility of evidence in certain circumstances, such as those in the case at bar, in which the appellant argues that she acted in self-defense in slaying the decedent, must be viewed in the light of relevancy to the case, within the limits established by the applicable rules of Article IV.
Evid.R. 404(A)(2) provides that evidence of a pertinent trait of character of the victim of the crime offered by the accused is admissible. Evid.R. 405 provides the means by which character may be proved. A person's character may be proved by reputation or opinion testimony in all cases in which character evidence is admissible, Evid.R. 405(A). Evidence of specific instances of conduct is admissible in cases where character, or trait of character, is an essential element of a charge, claim or defense. Evid.R. 405(B), State v. Carlson (1986), 41 Ohio App.3d 72,74, 508 N.E.2d 999, 1001, State v. Spinks (1992),79 Ohio App.3d 720, at 730, 607 N.E.2d. 1130, 1137.
The facts in the Spinks case are quite similar to the present case. There, the female defendant argued self-defense after killing her husband and sought to introduce evidence of his violent character. In Spinks, the 8th District Court of Appeals affirmed the trial court's ruling which denied the admission of evidence through witnesses and records to corroborate the defendant's testimony regarding her husband's violent character. That court held:
 In the present case, the trial court afforded appellant great leeway in testifying to matters of past violent incidents between appellant and the decedent. In fact, appellant testified to the decedent's violent past with his ex-wife. This was entirely permissible. Carlson, supra, paragraph one of the syllabus. However, corroborating evidence of the victim's character, offered to substantiate her testimony, through her mother's advice, a police report of a domestic violence incident, and a divorce complaint and affidavit filed by decedent's ex-wife was properly excluded. Evid.R. 405(B); Carlson, supra, at 74, 31 OBR at 114-115, 508 N.E.2d at 1001 ('The victim's character is not an essential element of self-defense.'); State v. Smith (1983), 10 Ohio App.3d 99, 101, 10 OBR 122, 125, 460 N.E.2d 693, 697.
State v. Spinks (1992), 79 Ohio App.3d at 730.
Here the appellant was allowed to testify at length as to what she knew about Lester Sevy's reputation for violence as well as specific acts of violence of which she was aware of on May 1, 1996. She testified about the violence that would occur when Lester had been drinking. She also testified that the victim had threatened her with a gun and testified about his subsequent arrest after this threat. She testified about the time that he anally raped her and about her personal knowledge of threats Lester Sevy had made to his past wives. This testimony was properly allowed under Evid.R. 404(A)(2).
For the second purpose, i.e., victim as the aggressor, the critical issue is the alleged victim's character. See Marts v.State, supra, and State v. Moore (1994), 97 Ohio App.3d 137,147-148, 646 N.E.2d 470, 477.
Generally, "evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion," Evid.R. 404(A). But "evidence of a pertinent trait of character of the victim of the crime offered by an accused * * * is admissible" Evid.R. 404(A)(2).
Rule 405 of the Ohio Rules of Evidence sets forth types of evidence that may be used to show a person's character:
 (A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 (B) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
Unless character is an essential element that he or she must prove, a party may only offer reputation or opinion testimony to establish the character of the victim, Evid.R. 405(A). Here, the character of the victim is not an essential element of self-defense, State v. Carlson, supra. See, State v. Williamson
(Apr. 9, 1998), Washington App. No. 97CA5, unreported.
The rule of exclusion, stated in Evid.R. 405(B) as a limit on relevancy, which precludes introduction of any extrinsic or corroborative evidence of specific "prior bad acts" of the victim for the purpose of showing the victim to be the aggressor, when the defendant alleges that he acted in self-defense, clearly has a basis in common sense and logic.
In cases of this ilk, the defendant's testimony as to the specific "prior bad acts" of the victim, of which she was aware at the time of the incident, for the purpose of illustrating the defendant's state of mind, is, almost without exception, uncontroverted. It is extremely difficult to imagine a factual situation where a prosecutor would elect or fail to present evidence that the defendant lied about such matters should such evidence be available to the prosecution to controvert a defendant's testimony on this issue.
Technically, Evid.R. 405(B) limits the purpose for which testimony by a defendant claiming self-defense is offered, which testimony concerns specific "prior bad acts" of the victim. This purpose, which permits introduction of such testimony by the defendant, is proof of the defendant's state of mind it the time of the incident giving rise to the criminal charge.
However, as a practical matter, the fact that such testimony by the accused is permitted, and is uncontroverted by the prosecution, will not be lost on the finder of fact, regardless of the technical basis for its introduction into evidence.
Ergo, the holding in Cleveland v. Hill (1989), 63 Ohio App.3d 194,198, 578 N.E.2d 509, where the introduction of such corroborative, or extrinsic, evidence of "prior bad acts" was excluded as cumulative. This finding is precisely correct since evidence of the victim's specific "prior bad acts" has already been admitted into evidence by the uncontroverted testimony of the appellant.
Further, extrinsic evidence of these "prior bad acts" of the victim would indeed have been cumulative, due to the fact that the testimony about them from the lips of the defendant-appellant, no matter what the stated purposes, was uncontroverted by the prosecution.
Therefore, witnesses other than the defendant may not testify regarding specific incidents of the victim's violent behavior because the character or trait is not "an essential element of the charge, claim or defense." See Evid.R. 405(B). A victim's purported violent nature is not an essential element of self-defense; and, therefore, witnesses other than the defendant have no admissible basis for testifying to prior specific instances of violent conduct, in an effort to establish that the victim was the aggressor. See Evid.R. 405(B), State v. Cuttiford (1994), 93 Ohio App.3d 546, 555,639 N.E.2d 472, 478, State v. Baker, at 209-210. Accordingly, this assignment of error is without merit, and is OVERRULED.
 Conclusion
The appellant's assignments of error are OVERRULED and the judgment of the trial court is AFFIRMED.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that the appellee recover of the appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that special mandate issue out of this court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Only.
Kline, P.J.: Concurs in Judgment and Opinion as to Assignments of Error I, II, and III; Concurs in Judgment Only as to Assignment of Error IV.
For the Court
 By: ___________________________ David T. Evans, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.