JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Michael Fitch, appeals the decision of the trial court based upon the jury verdict finding him guilty of one count of felonious assault, pursuant to R.C. 2903.11, a felony of the second degree. For the reasons set forth below, we affirm and remand for correction of the sentencing journal entry.
 {¶ 2} This case stems from an incident which occurred on December 30, 2000, at around 10:30 p.m., when the victim, Covey Weaver, and his on-again-off-again girlfriend, Kellie Jelenic, arrived at Jelenic's apartment, located at 6723 Gertrude Avenue in the City of Cleveland. As Weaver pulled into the driveway, Fitch (an ex-boyfriend of Jelenic's) appeared and began yelling and screaming at Weaver just outside of the driver's side door and began pounding on the vehicle's window. According to Weaver and Jelenic, as soon as Weaver exited the vehicle, Fitch began swinging a knife and slicing Weaver with the knife. As a result of the attack, Weaver received wounds to his neck and chin and two cuts to his right arm.
 {¶ 3} At some point during the attack, Weaver managed to get back into his car and drive himself to the hospital where he received treatment for his wounds. Several hours after the incident, Fitch called 911 claiming that he had been the victim of an assault at the hands of Weaver.
 {¶ 4} At trial, the evidence presented by the state demonstrated that Jelenic had on-again-off-again relationships with both Fitch and Weaver dating back as far as 1998-1999. These relationships lead to hostility, including incidents of violence between Fitch and Weaver.
 {¶ 5} Weaver testified that he and Jelenic lived together from 1994 until 1999 when she told him that she had been dating Fitch. Weaver further stated that after he and Jelenic ended their relationship, he had exchanged words with Fitch on several occasions. On one such occasion, in January of 2000, the two men began fighting and wrestling each other on the floor of a bar until the fight was broken up. Weaver denies having initiated the fight with an unprovoked first punch, as the appellant contends. Weaver also denied provoking the appellant on the night of the knife attack or making any threats of violence toward him.
 {¶ 6} Jelenic also testified about what transpired on December 30. She further testified about the January 2000 bar altercation and stated that it resulted from both Fitch and Weaver exchanging insults, not from an unprovoked assault by Weaver. She stated that she had been present on many occasions where Fitch had made threats toward Weaver, but she had never seen Weaver make threats toward Fitch.
 {¶ 7} The state called Robin Master, a friend of both Weaver and Jelenic, who stated that on two separate occasions, the appellant had called her and made threats against both Weaver and Jelenic.
 {¶ 8} The state's final witness was Officer Christopher Bush of the Cleveland Police Department, the officer who responded to the appellant's 911 call. Officer Bush testified that when he reached Fitch's residence, he was informed by Fitch that he had been attacked by Weaver as he attempted to retrieve some of his belongings from his ex-girlfriend's apartment. Fitch stated that Weaver had punched him and pushed him repeatedly, at which point he pulled out his pocket knife and began wildly swinging it in an attempt to repel Weaver's attack. He advised Officer Bush that he was not sure if he had hit Weaver with the knife or not. Officer Bush further stated that Fitch never told him that Weaver came at him with a weapon, specifically a car antenna, which the appellant later claimed at trial. In addition, the officer testified that the only injury which he observed on appellant's person was a small scratch on his forehead.
 {¶ 9} After the state rested it's case, the defense called Trisha Hare, mother of Fitch's three children. Hare attempted to testify as to two specific situations of violent conduct by Weaver when he allegedly communicated threats toward the appellant to Hare. However, these statements were not allowed into evidence by the trial court.
 {¶ 10} The defense then called the appellant who testified as to three previous alleged incidents involving Weaver threatening him with physical violence. He stated that the January 2000 bar incident was the result of an unprovoked punch from Weaver when he was not looking. He further testified about an alleged occasion when Weaver stood on the front porch of Jelenic's sister's house with three other men and began taunting the appellant to come out and fight, but he did not go outside of the home to confront the men. The appellant then testified that the final alleged incident occurred on September 15, 2000, when Weaver attempted to run him over with his car while he was in the middle of the street moving a dresser into an apartment.
 {¶ 11} The appellant testified that on the night of the December 30, 2000 incident, he was going to his ex-girlfriend's apartment to retrieve some of his personal belongings. As he approached the apartment, he heard spinning wheels coming from behind him, he looked back and saw Weaver driving right at him in the parking lot. He stated he tried to run, but twisted his ankle in his attempt to flee. He further testified that he continued trying to run away until he was overcome by Weaver who, now on foot and with a metal rod in his hand which resembled a car antenna, threatened to kill him. Weaver then struck him with the metal rod on his forehead and hand. At this point during the assault, due to his fear that he was about to die at the hands of Weaver, he pulled out his pocket knife and began swinging it wildly to stop Weaver's attack. After Weaver retreated into his car, the appellant went home and called 911 to report the incident.
 {¶ 12} At the conclusion of the appellant's case, the jury was charged with instructions for felonious assault, the affirmative defense of self-defense, and the lesser included offense of aggravated assault. The jury returned a verdict of guilty to the indicted charge of felonious assault. At the sentencing hearing, the appellant was sentenced to serve a term of seven years incarceration, one year short of the maximum sentence as prescribed under R.C. 2929.14(A). The journal entry from the sentencing hearing further imposed a period of post-release control after his release from prison.
 {¶ 13} The appellant now appeals and asserts the following assignments of error:
 {¶ 14} "I. The trial court erred in failing to admit rebuttal evidence offered by appellant's witness as evidence of the victim's violent character pursuant to Evid.R. 404."
 {¶ 15} "II. The trial court committed plain error when it erroneously instructed the jury on the method of deliberation on the charges of felonious assault and the offense of lesser degree, aggravated assault."
 {¶ 16} "III. Appellant was denied effective assistance of counsel by counsel's failure to object to erroneous jury instructions."
 {¶ 17} "IV. The trial court failed to advise appellant of mandatory post-release control sanctions imposed as a part of sentencing."
 {¶ 18} In appellant's first assignment of error, he maintains that the trial court erred by not allowing into evidence the testimony of Trisha Hare regarding alleged threats directed at him by Weaver. He contends that the exclusion of this testimony hindered his ability to establish his affirmative defense of self-defense. Appellant's contentions are without merit.
 {¶ 19} The decision to exclude or admit evidence rests within the sound discretion of the trial court; therefore, the decision of the trial court will not be disturbed upon appeal unless the actions amount to an abuse of discretion. State v. Combs (1991), 62 Ohio St.3d 278, 284. "An abuse of discretion connotes more than an error of law, or judgment. There must be a finding that the trial court's attitude was arbitrary, unreasonable, or unconscionable." State v. Banks (June 15, 2000), Cuyahoga App. No. 76271, at 8, citing State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 20} Evid.R. 404 and 405 deal with the production of character evidence. Evid.R. 404(A) provides:
 {¶ 21} "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
 {¶ 22} "* * *"
 {¶ 23} Evid.R. 405, "methods of proving character," provides:
 {¶ 24} "(A) Reputation or opinion
 {¶ 25} "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
 {¶ 26} "(B) Specific instances of conduct
 {¶ 27} "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."
 {¶ 28} This court has previously determined that when dealing with the testimony of specific instances of conduct "a defendant, when arguing self-defense, may testify about specific instances of the victim's prior conduct which were known to the defendant in order to establish the defendant's state of mind." (Emphasis Added) State v. Spinks (1992),79 Ohio App.3d 720, citing State v. Carlson (1986), 31 Ohio App.3d 72, paragraph one of the syllabus; State v. Brown (May 7, 1987), Cuyahoga App. No. 52098. However, the crucial element of a self-defense claim is the defendant's state of mind, not the character of the victim. State v.Koss (1990), 49 Ohio St.3d 213; State v. Carlson (1986), 31 Ohio App.3d 72.
 {¶ 29} In this case, the appellant was attempting to introduce specific instances of the victim's violent behavior through the testimony of other witnesses. This, however, is not permitted under Evid.R. 405. This court has already determined in State v. Banks (June 15, 2000), Cuyahoga App. No. 76271, that "corroborating evidence concerning specific instances of the victim's violent character should be excluded by a trial court." Id. at 10-11; See State v. Spinks (1992), 79 Ohio App.3d 720. Appellant's first assignment of error is therefore without merit.
 {¶ 30} Appellant's second assignment of error maintains that the trial court improperly instructed the jury on the method of deliberation on the charges against the appellant and his claim of self-defense. The appellant contends that the trial court improperly instructed the jury that it could proceed to consider the mitigating evidence of provocation only if it found that the state had not proved the charge of felonious assault.
 {¶ 31} As stated by both parties to this review, defense counsel failed to object to any perceived error in the trial court's jury charge; therefore, absent plain error, an appellate court will not consider errors which the defendant failed to object to at the trial level. State v. Williams (1977), 51 Ohio St.2d 112. The plain error rule is to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice. State v. Copperrider (1983), 4 Ohio St.3d 226.
 {¶ 32} A defective jury instruction does not rise to the level of plain error unless it can be shown that the outcome of the trial would clearly have been different but for the alleged error. State v. Campbell
(1994), 69 Ohio St.3d 38; Cleveland v. Buckley (1990), 67 Ohio App.3d 799. However, as in the case sub judice, when viewing a single challenged jury instruction, it may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. See State v. Price
(1979), 60 Ohio St.2d 136.
 {¶ 33} The challenged instruction states:
 {¶ 34} "If the evidence warrants it you may find the defendant guilty of an offense lesser than felonious assault as charged in the indictment. The lesser offense that you may consider is aggravated assault. However, notwithstanding this right, it's your duty to accept the law as given to you by the court. If the facts and the law warrant a conviction charged in the indictment, namely, felonious assault, then it is your duty to make that finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from an unpleasant duty. It's included to prevent the failure of justice if the evidence fails to prove the original charge, but does justify a verdict for the lesser offense." (TR pp. 363-364).
 {¶ 35} Upon review of this case, the instruction would yield a level of confusion by excluding any mention of the appellant's self-defense claim if this were the only instruction given by the trial court to the jury. However, as stated earlier, jury instructions must be viewed in total and not line by line looking for any one defect in the charge.
 {¶ 36} A full review of the jury charge shows that the trial court continued on for ten additional transcript pages discussing the charge of felonious assault, the appellant's self-defense claim, the lesser included charge of aggravated assault, and the proper sequence in which the jury should review these charges during their deliberations.
 {¶ 37} The trial court went into great detail in pages 367-370 concerning how the jury must deliberate when dealing with the indicted offense and the appellant's affirmative defense. Any error that may have been made by the trial court earlier was subsequently corrected through additional jury instructions. Therefore, the misstatement found in the trial court's jury instruction cannot be viewed as plain error and cannot be found to have altered the outcome of the trial had the misstatement not been present. Appellant's second assignment of error is therefore without merit.
 {¶ 38} In appellant's third assignment of error, he maintains that his trial counsel's performance fell below an objective standard of reasonable representation by his failure to object to the erroneous jury instruction.
 {¶ 39} Based on this court's determination of appellant's second assignment of error, appellant's third assignment of error is rendered moot and need not be addressed.
 {¶ 40} Appellant's fourth assignment of error maintains that the trial court failed to properly inform him as part of his sentence that he was to receive a mandatory period of post-release control, pursuant to R.C. 2967.28, to be imposed after his release from prison.
 {¶ 41} The Supreme Court of Ohio has recently held that "pursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence." Woods v. Telb (2000), 89 Ohio St.3d 504,513; See State v. Morrissey (Dec. 18, 2000) Cuyahoga App. No. 77179. The court is obligated to notify a defendant of post-release control and the possibility of sanctions, including prison, available for violation of such control. See State v. Newman (Jan. 31, 2002), Cuyahoga App. No. 80034.
 {¶ 42} The reference to any extensions provided by law in the sentencing journal is insufficient to qualify as notification to an offender of post-release control. See State v. Stell (May 16, 2002), Cuyahoga App. No. 73850; State v. Dunaway (Sept. 13, 2001), Cuyahoga App. No. 78007.
 {¶ 43} The lower court is therefore ordered to correct the appellant's sentencing journal entry to reflect that post-release control is not part of his sentence. Appellant's fourth assignment of error is therefore rendered moot.
Judgment affirmed and remanded.
Case remanded to the trial court for further proceedings consistent with this opinion.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and DIANE KARPINSKI, J., concur.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).